[Cite as *State v. Eads*, 2020-Ohio-2805.]

# IN THE COURT OF APPEALS

# FIRST APPELLATE DISTRICT OF OHIO

# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NOS. C-190213 |
| | | C-190214 |
| Plaintiff-Appellee, | : | C-190215 |
| | | TRIAL NOS. C-17TRC-39192A |
| vs. | : | C-17TRC-39192B |
| | | C-17TRC-39192C |
| KYLE EADS, | : | |
| Defendant-Appellant. | : | *O P I N I O N.* |

Criminal Appeals From:  Hamilton County Municipal Court

Judgments Appealed From Are: Affirmed in C-190213; Appeals Dismissed in
                     C-190214 and C-190215

Date of Judgment Entry on Appeal: May 6, 2020

*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *Scott M. Heenan*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Raymond T. Faller*, Hamilton County Public Defender, and *Lora Peters*, Assistant Public Defender, for Defendant-Appellant.

**WINKLER, Judge**.

{¶1}   This appeal of a driving-under-the-influence conviction involves the trial court's denial of a motion to suppress medical records containing tests for intoxicants that hospital staff administered for medical purposes when treating the defendant-appellant Kyle Eads after he was seriously injured in a car accident.  A law enforcement officer obtained those medical records from the hospital without a warrant, relying on state statutes that direct a "health care provider" to supply patient alcohol- and drug-test results to law enforcement when the requesting officer indicates that the individual is the subject of an "official criminal investigation * * * or proceeding." R.C. 2317.02(B)(2)(a) and 2317.022.

{¶2}   We hold that the officer's warrantless acquisition of Eads's medical records was in violation of his Fourth Amendment rights.   Eads retained a reasonable expectation of privacy in the alcohol- and drug-test results created during his emergency treatment, even though R.C. 2317.02(B)(2)(a) and 2317.022 ostensibly required the hospital to comply with the officer's request for the information and the information is exempt from Ohio's physician-patient privilege. We further determine the officer's reliance on the statutes to obtain the records was in good faith, as more fully discussed below.   Consequently, we hold that the exclusionary rule does not require the suppression of those unlawfully obtained test results.   For this reason, we conclude that the trial court did not err by denying the motion to suppress.  Accordingly, we affirm Eads's conviction.

### Background Facts and Procedure

{¶3}   The undisputed facts show that Eads was involved in a single-car accident on 1-275 in Hamilton County in the early morning hours of April 8, 2017.  Paramedics

found him unconscious and transported him to University Hospital for medical treatment. As part of his medical treatment, hospital staff tested Eads's blood and urine for alcohol and drugs. Law enforcement officers from the Ohio State Highway Patrol ("OSHP") assigned to investigate the accident were unable to interview Eads at the scene or the hospital. Based on accident scene observations that gave them probable cause, they cited Eads for operating a vehicle while impaired ("OVI"), in violation of R.C. 4511.19(A)(1)(a), and two other offenses.

{¶4} Several months later, in furtherance of the investigation and pursuant to a written OSHP policy that has since been revised, an officer submitted to the treating hospital's medical records department a request under R.C. 2317.02(B)(2)(a) and 2317.022(B). These statutes provide a mechanism for a law enforcement officer to obtain certain alcohol- and drug-test-result records from a health care provider. The officer's written records request must identify an individual, indicate that the individual is the subject of "an official criminal investigation * * * action or proceeding," and further state that the officer

> believe[s] that one or more tests has been administered to that person
> * * * to determine the presence or concentration of alcohol, a drug of
> abuse, a combination of them, a controlled substance, or a metabolite
> of a controlled substance in that person's whole blood, blood serum or
> plasma, breath, or urine at a time relevant to the criminal offense in
> question.

R.C. 2317.022.

{¶5} These statues further direct that the health care provider "shall" provide the alcohol- and drug-test results, "except to the extent specifically

3

prohibited" by any state or federal law. R.C. 2317.02(B)(2)(a). The alcohol- and drug-test results, if any, are exempt from Ohio's physician-patient privilege in criminal actions. R.C. 2317.02(B)(1)(c). Ohio law further provides that the trial court may consider the results of blood and urine testing as evidence of guilt in an OVI prosecution for driving while under the influence of "alcohol, a drug of abuse, or a combination of them," in violation of R.C. 4511.19(A)(1)(a) or "an equivalent offense that is vehicle-related," if the records are supported by "expert testimony." R.C. 4511.19(D)(1)(a).

{¶6} In this case, after receiving the records request form, hospital personnel gave the requesting OSHP officer a copy of Eads's blood-and-urine-test results. Later, in response to the criminal charges, Eads moved to suppress evidence of the blood-alcohol-test results on the ground that the officer's collection of his hospital medical records was a warrantless search in violation of his privacy rights protected by the Fourth Amendment to the United States Constitution.[1]

{¶7} In response, the state argued that law enforcement's collection of Eads's medical records from the hospital pursuant to the statutes was not a "search" that triggered Fourth Amendment protection. According to the state, Eads lacked a reasonable expectation of privacy in the test results because the state laws required the hospital to provide the information to the police and exempted the information from the physician-patient privilege. Alternatively, the state argued that if the officer had violated Eads's constitutional rights, the exclusionary rule did not apply because

---

[1] Eads argued that the search also violated the protection against unreasonable searches and seizures under Article I, Section 14, of the Ohio Constitution. He has never, argued, however that the state constitution affords him greater protection than the Fourth Amendment to the federal Constitution. As a result, we use the term "Fourth Amendment" to collectively refer to both the Fourth Amendment and Article I, Section 14, Ohio Constitution.

the officer had relied in good faith upon a departmental policy that was based upon state statutes that have never been declared unconstitutional.

{¶8}   The trial court denied the motion to suppress and, following Eads's no-contest pleas, convicted Eads of the offenses charged, including OVI.   Eads now appeals that OVI conviction in the appeal numbered C-190213, contending in one assignment of error that the trial court erred by failing to grant his motion to suppress.

## Analysis

{¶9}   Usually, 0ur review of a motion to suppress presents a mixed question of fact and law.  *See State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8.  Eads does not challenge the trial court's findings, only its legal conclusions.  Thus, we accept the trial court's factual findings and review de novo the court's application of the law to those facts.  *See id.*

{¶10} The Fourth Amendment to the United States Constitution provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated."  The essential purpose of the Fourth Amendment proscription "is to safeguard the privacy and security of individuals against arbitrary invasions by governmental officials." *Camera v. Mun. Court of City and Cty. of San Francisco*, 387 U.S. 523, 528, 87 S.Ct. 1727, 18 L.Ed.2d 930 (1967), quoted in *Carpenter v. United States*, __ U.S. __, 138 S.Ct. 2206, 2213, 201 L.Ed.2d 507 (2018); *Schmerber v. California*, 384 U.S. 757, 767, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966).

{¶11}   Generally, a warrant must be secured for a "search" to comply with the Fourth Amendment, subject to certain exceptions that the state has not relied upon

in this case. *See Carpenter* at 2221; *Kentucky v. King*, 563 U.S. 452, 459, 131 S.Ct. 1849, 179 L.Ed.2d 865 (2011); *Stone v. City of Stow*, 64 Ohio St.3d 156, 164, 593 N.E.2d 292 (1992), fn. 4.

{¶12} Whether a search has occurred for Fourth Amendment purposes depends upon whether the person invoking the Fourth Amendment's protections can claim a " 'legitimate expectation of privacy' " that has been infringed by government action. *Smith v. Maryland*, 442 U.S. 735, 740, 99 S.Ct. 2577, 61 L.Ed.2d 220 (1979). This inquiry turns on whether an individual has a subjective expectation of privacy and whether that expectation is one that society recognizes as reasonable. *See Katz v. United States*, 389 U.S. 347, 351, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967).

{¶13} In this case, the trial court determined that Eads lacked a reasonable expectation of privacy in the medical records containing the alcohol- and drug-test results. The United States Supreme Court has not addressed whether a defendant similarly situated to Eads has a reasonable expectation of privacy in medical records containing the results of blood and urine tests for alcohol and drugs, created by a hospital for medical treatment, that are not privileged under state law and that are the subject of a state statute providing law enforcement with access to the records for criminal investigations without requiring a warrant. This question touches on several areas of Fourth Amendment law that the United States Supreme Court has addressed, some of which we now review.

{¶14} The Supreme Court has addressed whether privacy interests are implicated in impaired driving criminal investigations when there is state involvement in extracting and testing of bodily fluids for intoxicants. *See, e.g., Mitchell v. Wisconsin,* ____ U.S. ____, 139 S.Ct. 2525, 204 L.Ed.2d 1040 (2019);

6

*Birchfield v. North Dakota*, \_\_\_\_ U.S. \_\_\_\_, 136 S.Ct. 2160, 2175-2176, 195 L.Ed.2d 560 (2016); *Missouri v McNeely*, 569 U.S. 141, 133 S.Ct. 1552, 185 L.Ed.2d 696 (2013); *Schmerber v. California*, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966). Motorist have a diminished expectation of privacy " 'because of th[e] compelling governmental need for regulation.' " *McNeely* at 159, quoting *California v. Carney*, 471 U.S. 386, 392, 105 S.Ct. 2066, 85 L.Ed.2d 406 (1985).

{¶15}  Even though the Court has recognized that motorist have a diminished expectation of privacy, this state-action category of intoxicant testing is considered a search that triggers the Fourth Amendment's warrant requirement, subject to several well-defined exceptions that obviate the warrant requirement.  *See Mitchell* at 2533-2539;  *Schmerber*, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908.

{¶16}  The intrusion on privacy varies depending upon the circumstances, including the extent of any physical intrusion into the body, whether the defendant is under arrest, any compelling need for the testing, and, importantly, the information exposed.  *See, e.g., Mitchell* at 2533-2539; *Birchfield* at 2176-2177. Therefore, once a person is lawfully under arrest for drunk driving, a breath test that leaves no sample with the police, and that reveals nothing more than the amount of alcohol in the suspect's breath, "does not 'implicate significant privacy concerns' " and is lawful without a warrant even without a showing of exigent circumstances.  *Birchfield*, \_\_\_\_ U.S. \_\_\_\_, 136 S.Ct. at 2177-2178, 195 L.Ed.2d 560, quoting *Skinner v. Ry. Labor Executives' Assn.*, 489 U.S. 602, 626,  109 S.Ct. 1402, 103 L.Ed.2d 639 (1989).

{¶17}  Relatedly, the United States Supreme Court has spoken on the extent to which privacy interests are implicated in general with respect to the detection of contraband. "The legitimate expectation that information about perfectly lawful

7

activity will remain private is categorically distinguishable from [one's] hopes or expectations concerning the nondetection of contraband." *Illinois v. Caballes*, 543 U.S. 405, 410, 125 S.Ct. 834, 160 L.Ed.2d 842 (2005.) Accordingly, "[a] dog sniff conducted during a concededly lawful traffic stop that reveals no information other than the location of a substance that no individual has any right to possess does not" compromise any legitimate interest in privacy and "violate the Fourth Amendment." *Id.* The same is true of police field testing that merely discloses whether or not a particular substance is cocaine and "no other arguably 'private' fact." *United States v. Jacobsen*, 466 U.S. 109, 123, 104 S.Ct. 1652, 80 L.Ed.2d 85 (1984).

{¶18} Notably, the United States Supreme Court has recognized a patient's general privacy interest in hospital diagnostic test results created by state action to obtain evidence of a crime. *See Ferguson v. City of Charleston*, 532 U.S. 67, 78, 121 S.Ct. 1281, 149 L.Ed.2d 205 (2001). *Ferguson* involved a state hospital's program developed with law enforcement to test maternity patients' urine for cocaine, with the understanding that the results would be shared with law enforcement. The government conceded the testing and test-result reporting resulted in a search that implicated the Fourth Amendment, but argued the search fell under the "special needs doctrine" exception to the warrant requirement. *Id.* at 73 and 76. The special needs doctrine weighs "the intrusion on the individual's interest in privacy against the 'special needs' that support[] the program." *Id.* at 78.

{¶19} The Supreme Court rejected the special needs argument because the "immediate" goal of the search was "to generate evidence for law enforcement purposes," *id.* at 83, and found the testing and reporting were unreasonable searches absent patients' consent. *Id.* at 76, 86. In reaching this conclusion, the court stated

that "[t]he reasonable expectation of privacy enjoyed by the typical patient undergoing diagnostic tests in a hospital is that the results of those tests will not be shared with nonmedical personnel without her consent." *Id.* at 78. The Court, however, qualified that statement in a footnote:

> There are some circumstances in which state hospital employees, like other citizens, may have a duty to provide law enforcement officials with evidence of criminal conduct acquired in the course of routine treatment, *see, e.g.*, S.C. Code Ann. § 20—7—510 (2000) (physicians and nurses required to report to child welfare agency or law enforcement authority "when in the person's professional capacity the person" receives information that a child has been abused or neglected). While the existence of such laws might lead a patient to expect that members of the hospital staff might turn over evidence acquired in the course of treatment to which the patient had consented, they surely would not lead a patient to anticipate that hospital staff would intentionally set out to obtain incriminating evidence from their patients for law enforcement purposes.

*Id.* at 78, fn. 13. Moreover, the *Ferguson* court did not decide whether *"disclosure"* of preexisting test results would also be a search implicating the Fourth Amendment. (Emphasis added.) *Kerns v. Bader*, 663 F.3d 1173, 1185 (10th Cir.2011).

{¶20} Privacy rights have also been addressed under the third-party disclosure doctrine rooted in *United States v. Miller*, 425 U.S. 435, 96 S.Ct. 1619, 48 L.Ed.2d 71 (1976), and *Smith v. Maryland*, 442 U.S. 739, 99 S.Ct. 2577, 61 L.Ed.2d 220 (1979), and referenced by the dissent in *Ferguson*, 532 U.S. 67, 94-95, 121 S.Ct.

1281, 149 L.Ed.2d 205 (Scalia, J., dissenting). Under this doctrine, a person lacks a reasonable expectation of privacy in information he or she " 'voluntarily turns over to third parties.' " *Carpenter*, ___ U.S. ___, 138 S.Ct. at 2216, 201 L.Ed.2d 507, quoting *Smith* at 743-744, notwithstanding a belief that the information will stay private. *Carpenter* at 2216, citing *Miller* at 443. This includes financial information a bank depositor "voluntarily conveyed to * * * banks and exposed to their employees in the ordinary course of business," *Miller* at 442, and telephone numbers that a suspect dialed from his home but were processed by his telephone company. *Smith* at 744.

{¶21} The *Miller* Court explained:

[T]he Fourth Amendment does not prohibit the obtaining of information revealed to a third party and conveyed by him to Government authorities, even if the information is revealed on the assumption that it will be used only for a limited purpose and the confidence placed in the third party will not be betrayed.

*Miller* at 443.

{¶22} The Supreme Court recently distinguished *Smith* and *Miller* in a case involving cell-site location information that the government was able to obtain from a suspect's cell phone service providers without a warrant. *Carpenter*, ___ U.S. ___, 138 S.Ct. 2206, 201 L.Ed.2d 507. The *Carpenter* Court clarified that an individual's reasonable expectation of privacy under the Fourth Amendment is not eliminated simply because records are held by a third party. *Id.* at 2217.

*Ohio Courts*

{**¶23**} Ohio appellate courts are in conflict as to whether the Fourth Amendment is violated by a law enforcement officer's use of R.C. 2317.02 and 2317.022 to obtain, without a warrant or patient consent, medical records containing toxicology test results from a hospital that performed the tests for the purpose of medical treatment after a suspicious accident. *State v. Smith*, 2d Dist. Greene No. 2019-CA-16, 2019-Ohio-4706, ¶ 9, fn. 3. The Third and Fifth Appellate Districts have held that without a warrant or an exception, the defendant's Fourth Amendment rights are violated. *See State v. Clark*, 2014-Ohio-4873, 23 N.E.3d 218, ¶ 42 (3d Dist.); *State v. Little*, 2014-Ohio-4871, 23 N.E.3d 237, ¶ 40 (3d Dist.); *State v. Saunders*, 5th Dist. Morrow No. 17CA0001, 2017-Ohio-7348, ¶ 32. The Eighth District has held that law enforcement may obtain intoxicant testing results from a treating hospital without a warrant by following the procedures in R.C. 2317.02(B)(2)(a) and 2317.022. *See City of Cleveland v. Dames*, 8th Dist. Cuyahoga No. 82980, 2003-Ohio-6054, ¶ 6.

{**¶24**} Neither the Ohio Supreme Court nor this court has reviewed the police procedure at issue in the context of a Fourth Amendment challenge. But this court has upheld the constitutionality of R.C. 2317.02(B)(2) and 2317.022 against a criminal defendant's due-process based challenge. *See State v. Slageter*, 1st Dist. Hamilton No. C-990584, 2000 WL 331633 (Mar. 31, 2000). Although the facts of the *Slageter* case suggest that a law enforcement officer had obtained Slageter's medical records during a drunk driving investigation without a getting a warrant, Slageter did not raise a Fourth Amendment challenge.

11

*Reasonable Expectation of Privacy*

{¶25} The trial court found that the enactment of R.C. 2317.02(B)(2) and 2317.022 left Eads without any reasonable expectation of privacy in the medical records containing the alcohol- and drug-testing reports. This analysis relates to the *Ferguson* court's suggestion that a state's mandatory reporting statute could eliminate any reasonable expectation of privacy in hospital records. *Ferguson*, 532 U.S. at 78, 121 S.Ct. 1281, 149 L.Ed.2d 205, fn. 13. The Ohio statutes at issue, however, are not the type of mandatory reporting statutes referenced in *Ferguson*. Health care providers do not have a duty to report the sought after information, although they must comply with a law enforcement officer's request made under the statutes. Further, one could read R.C. 2317.02(B)(2)(a) and 2317.022 as a reflection of the General Assembly's understanding that those records were not protected by the Fourth Amendment and its intent that law enforcement should be restricted in accessing medical records due to their sensitive nature unless the statutory prerequisites are met.

{¶26} In any event, notwithstanding the footnote in *Ferguson*, the United States Supreme Court has rejected the argument that "concepts of privacy under the laws of each State are to determine the reach of the Fourth Amendment." *California v. Greenwood*, 486 U.S. 35, 44, 108 S.Ct. 1625 100 L.Ed.2d 30 (1988). Thus, Ohio's passage of these statutes cannot strip away the protections of the Fourth Amendment. *See Little*, 2014-Ohio-4871, 23 N.E.3d 237, at ¶ 27.

{¶27} The trial court also cited in support of its conclusion cases from other states that apply the third-party doctrine to hospital medical records containing blood-alcohol reports created for medical purposes during treatment after a vehicle

accident. *See People v. Perlos*, 436 Mich. 305, 329, 462 N.W.2d 310 (1990); *State v. Hardy*, 963 S.W.2d 516, 526 (Tex.Crim.App.1997). In the view of these courts, the patient's privacy interests were frustrated in the first instance by the third-party caregiver. This conclusion may be compatible with the privacy rights analysis in *Ferguson*. *See* 1 Wayne R. LaFave, *Search and Seizure*, Section 2.7(d) (5th Ed.2019). This conclusion, however, predates the United States Supreme Court's *Carpenter* decision, which applied a modern and more nuanced approach to the third-party doctrine.

{¶28} At issue in *Carpenter* was whether law enforcement needed a warrant to obtain a robbery suspect's "cell-site location information (CSLI)" from the suspect's wireless carriers. *Carpenter*, ___ U.S. ___, 138 S.Ct. 2206, 201 L.Ed.2d 507. The FBI obtained Carpenter's records from his wireless carriers by complying with a provision of the Stored Communications Act, a federal law that allows law enforcement to obtain a court order for certain telecommunication records by " 'offer[ing] specific and articulable facts showing that there are reasonable grounds to believe' that the records sought 'are relevant and material to an ongoing criminal investigation.' " *Carpenter* at 2212, quoting 18 U.S.C. 2703(d). The statute, like the Ohio statutes at issue in this case, does not require law enforcement to secure a warrant before obtaining the records.

{¶29} Carpenter, who was later convicted of several offenses based in part on the CSLI evidence, was unsuccessful in the district court and the Sixth Circuit Court of Appeals on his claim that the government's collection of his CSLI was a warrantless search in violation of the Fourth Amendment. *Carpenter* at 2212-2213. The Supreme Court reversed, holding that the government's acquisition of

Carpenter's CSLI was a search under the Fourth Amendment. This was true even though Carpenter had shared the information with the third-party wireless carriers, because Carpenter retained a legitimate privacy interest in the records, which captured his physical movements and revealed an "intimate window" into his life. *Id.* at 2217.

{¶30} The *Carpenter* Court emphasized the "narrow[ness]" of the decision. *Id.* at 2220. But the decision discloses a two-part analysis for determining when an individual has a reasonable expectation of privacy in information shared with another. This involves an inquiry into the "nature of the particular documents sought" and whether they were "volunar[ily] expos[ed.]" *Id.* at 2219-2220. Applying this test in context, we conclude that Eads had a reasonable expectation of privacy in the blood and urine tests for alcohol and drugs, which contained sensitive information about his personal choices and health, and that the information was not in any real sense voluntarily exposed to the hospital personnel who provided him emergency treatment.

*Nature of the Documents Sought*

{¶31} The state claims the law enforcement officer, in compliance with the statutory procedures, only sought medical records containing the level of alcohol in Eads's blood at the time of the accident. This is not factually accurate. The officer sought records involving the testing of Eads's "blood," "breath," and "urine" for "alcohol," "a drug of abuse," "a controlled substance," or "a metabolite of a controlled substance."

{¶32} Thus, the officer sought records containing information about Eads's use of alcohol, which itself is legal, drugs of abuse as defined under Ohio law, some of

14

which are now legal to consume under Ohio law, and controlled substances, which are legally prescribed for potentially stigmatizing conditions diagnosed by a physician. This information exposed too much about Eads's private life, even though it could also provide evidence of a crime.

{¶33} Similar to the cell phone location data at issue in *Carpenter*, the medical records containing the reports revealing Eads's use of alcohol, drugs of abuse, and controlled substances are equally deserving of protection because of their "deeply revealing nature," *see Carpenter* at 2223, and "provi[sion] [of] an intimate window into [Eads's] life." *See id.* at 2217.

{¶34} The officer's acquisition of Eads's blood-alcohol level did not involve a physical intrusion into Eads's body, but it did reveal much more than the amount of alcohol in his blood, and the entirety of that written information was turned over the officer.

*Was the Information Voluntarily Exposed?*

{¶35} The second part of the *Carpenter* analysis relates to whether the information was "voluntar[ily] expos[ed.]" *Carpenter* at 2220. The *Carpenter* court compared the facts involved with those of the important cases in the growth of the third-party doctrine. After doing so, it concluded that unlike the cancelled checks, deposit slips, and monthly statements collected by the government from banks in *Miller*, 425 U.S. 436, 443, 96 S.Ct. 1619, 48 L.Ed.2d 71, and the dialed phone numbers the government recorded in *Smith*, 442 U.S. 735, 740, 99 S.Ct. 2577, 61 L.Ed.2d 220, a cell phone subscriber has not in any meaningful sense voluntarily assumed the risk of turning over a compressive "dossier" of his physical movements. *Carpenter* at 2220. The Court focused on the indispensable requirement of carrying

a cell phone "to participat[e] in modern society," *id.* at 2220, and the "inescapable and automatic nature of [the wireless carrier's] collection" of the locator information. *Id.* at 2223.

{¶36} Eads's conveyance of the information in his blood and urine to the hospital is less voluntary than the cell phone subscriber's conveyance of cell phone location data to the wireless carrier. Although we assume that Eads wanted the emergency treatment and that motorists consent to emergency treatment, the record suggests only that it was the hospital's protocol to collect the information so that it could provide the appropriate medical treatment to an unconscious Eads. The Supreme Court has never equated the decision to drive with an actual waiver of Fourth Amendment rights. *See Mitchell*, ____ U.S. ____, 139 S.Ct. at 2532-2533, 204 L.Ed.2d 1040. Further, there is no evidence that Eads actually consented to the sharing of the results.

{¶37} Thus, under the facts of this case, we conclude that Eads had a reasonable expectation of privacy in the hospital records containing the alcohol- and drug-test results. Ultimately, the investigating officer was able to see too far into Eads's private life without the protections provided by a warrant, a right guaranteed by the Fourth Amendment.[2] Consequently, we conclude that the evidence the officer obtained from Eads's treating hospital was the product of a search and that the

---

[2] For the first time, the state argues that the officer's record request did not implicate the Fourth Amendment because it did not involve a "show of force" to obtain the records. The state focuses on the requirements for a "seizure" of a person during an encounter with law enforcement, *see In re J.C.*, 1st Dist. Hamilton Nos. C-180478 and C-180479, 2019-Ohio-4815, ¶ 12, and the absence of a penalty in R.C. 2317.02(B)(2)(a) for the hospital's failure to comply with the statute's mandate that it "shall supply" the requested records. We decline to address this argument because it was not raised in the trial court and it is not supported by citation to any relevant case law.

officer was required to obtain a warrant, issued from a neutral and detached magistrate upon a showing of probable cause.

*Exclusionary Rule*

**{¶38}** Eads additionally argues the trial court erred by failing to apply the exclusionary rule to the illegally obtained blood-alcohol test results. The exclusionary rule was created as a judicial remedy for governmental violations of the Fourth Amendment. *Davis v. United States*, 564 U.S. 229, 236, 131 S.Ct. 2419, 180 L.Ed.2d 285 (2011); *Illinois v. Krull*, 480 U.S. 340, 347, 107 S.Ct. 1160, 94 L.Ed.2d 364 (1987); *State v. Banks-Harvey*, 152 Ohio St.3d 368, 2018-Ohio-201, 96 N.E.3d 262, ¶ 25; *State v. Johnson*, 141 Ohio St.3d 136, 2014-Ohio-5021, 22 N.E.3d 1061, ¶ 50. The main purpose of the exclusionary rule is to deter unlawful police conduct in the future. *Davis* at 236-237; *Banks-Harvey* at ¶ 25; *Johnson* at ¶ 50.

**{¶39}** Courts have held that suppression is not an available remedy when a law enforcement officer conducted a search in good-faith reliance on some higher authority. This includes a statute or binding precedent, even if the statute or precedent were later held unconstitutional or overruled. *Davis* at 241; *Illinois v. Krull*, 480 U.S. 340, 107 S.Ct. 1160, 94 L.Ed.2d 364 (1987); *Johnson* at ¶ 4 and 42. The issue of good-faith revolves around whether "it was objectively reasonable for the officer[ ] to rely on the statute at the time of the search." *United States v. Carpenter*, 926 F.3d 313, 318 (6th Cir.2019). The trial court in this case found that it was.

**{¶40}** Eads argues it was not objectively reasonable for the officer to rely on R.C. 2317.02(B)(2)(a) and 2317.022 to obtain the records without a warrant because the Third and Fifth Appellate Districts had already held that the statutes did not

17

authorize a warrantless search of a hospital's medical records containing the intoxicant test results of an OVI suspect. He bolsters his argument by noting that the OSHP was the same law enforcement agency involved in the cases from the Third and Fifth Appellate Districts.

{¶41} Eads, however, fails to take into account the uncertainty of the law concerning the Fourth Amendment and third-party records, including medical records. *See Kerns*, 663 F.3d 1173, 1184-1185. The Third and Fifth Appellate District cases cited by Eads conflict with an Eighth Appellate District case, as well as cases from other states analyzing similar questions. *See, e.g., Perlos*, 436 Mich. 305, 462 N.W.2d 310; *Hardy*, 963 S.W.2d 516. Further, at the time of the challenged law enforcement conduct, neither this court nor the Ohio Supreme Court had decided the issue. Moreover, Eads does not cite any clearly dispositive federal case law predating the conduct at issue, and binding case law from the Federal Circuit Court of Appeals for the Sixth Circuit weakens his position. *See Jarvis v. Wellman*, 52 F.3d 125, 126 (6th Cir.1995) (the constitutional right to privacy does not apply to medical records). Importantly, the conduct predated the United States Supreme Court's 2018 decision in *Carpenter*, a decision clarifying the third-party doctrine and privacy protection. Finally, the OSHP no longer obtains these types of medical records without a warrant.

{¶42} We conclude, considering the state of the law in 2017, that it was objectively reasonable for the law enforcement officer to rely on OSHP's policy implementing the statutory procedure for obtaining these records without a warrant. Further, suppression of the evidence obtained as a result of the statutorily-based records request would have no appreciable effect in deterring a violation of the

18

Fourth Amendment. For these reasons, we hold that the good-faith exception to the exclusionary rule applies.

{¶43} Ultimately, the trial court did not err by denying Eads's motion to suppress. According, we overrule Eads's assignment of error in the appeal of his OVI conviction, C-190213.

### C-190214 and C-190215

{¶44} Eads has also sought appellate review of two additional judgments. The appeals numbered C-190214 and C-190215 relate to Eads's convictions for the other offenses arising out of his car accident—safety restraint and reasonable-control violations. But Eads does not raise any assignment of error with respect to those convictions and has abandoned them. *See State v. Harris*, 2017-Ohio-5594, 92 N.E.3d 1283, ¶ 42-43 (1st Dist.).

### Conclusion

{¶45} In sum, having overruled the assignment of error, we affirm the trial court's judgment in the appeal numbered C-190213. Because Eads abandoned his other appeals, we dismiss the appeals numbered C-190214 and C-190215.

Judgment accordingly.

**MOCK, P.J.,** and **BERGERON, J.,** concur.

Please note:

The court has recorded its own entry on the date of the release of this opinion.