[Cite as *State v. Russell*, 2025-Ohio-5306.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

State of Ohio

    Appellant

v.

Anthony M. Russell

    Appellee

Court of Appeals No.  L-23-1301

Trial Court No.  CR0202301688

**DECISION AND JUDGMENT**

Decided:  November 25, 2025

* * * * *

Julia R. Bates, Lucas County Prosecuting Attorney, and
Evy M. Jarrett, Assistant Prosecuting Attorney, for appellant.

Jerome Phillips, for appellee.

* * * * *

**DUHART, J.**

{¶ 1}  This case is before the court on appeal by appellant, the State of Ohio, from

the December 8, 2023 judgment of the Lucas County Court of Common Pleas.  For the

reasons that follow, we affirm.

## I.  Assignments of Error

I.     The trial court erred in holding that the Fourth Amendment to the
United States Constitution requires law enforcement to obtain a
search warrant in order to receive toxicology test results for a

particular date, when those results are to be used in a criminal investigation.

II.     The trial court erred in interpreting *Ferguson v. City of Charleston*, 532 U.S. 67… (2001) and *Missouri v. McNeely*, [569 U.S. 141] … (2013) to create a reasonable expectation of privacy in medical records for Fourth Amendment purposes.

III.    The trial court erred in rejecting law enforcement's good faith reliance on the grand jury subpoena process, in the absence of controlling authority rejecting law enforcement's ability to request and receive toxicology test results for use in criminal investigations.

## II.  Background

{¶ 2}  On May 8, 2023, Anthony Russell was indicted on two counts of aggravated vehicular assault in violation of R.C. 2903.08(A)(1)(a) and (B), felonies of the third degree, due to a motor vehicle collision which occurred on January 12, 2023. Russell was injured in the accident and sought treatment at Toledo Hospital.  As part of the investigation, on January 23, 2023, a grand jury subpoena duces tecum was issued ordering Toledo Hospital to release Russell's medical records for injuries sustained in the accident.  The subpoena noted that the "specific information requested from the medical records" included "[d]iagnosis of injuries as a result of the automobile accident that occurred on 1-12-23, and toxicology reports."  Toledo Hospital complied with the request and on September 15, 2023, Russell filed a motion to suppress on the basis that this was a warrantless search and seizure which violated his right to privacy and his Fourth Amendment protection against unreasonable searches and seizures.  For purposes of the motion to suppress, the parties stipulated to the following facts:

1. On January 12, 2023, at about 5:41 p.m., Anthony Russell's vehicle collided with a vehicle driven by R.M. on Central Avenue.

2.

2.  Russell was injured in the accident and sought treatment at Toledo Hospital.  About 8 days afterwards, Officer Aaron Ritter obtained a grand jury subpoena for medical records, a copy of which has been submitted to the Court and marked as Exhibit 1 in connection with the hearing held on November 21, 2023.[1]

3.  … [N]o blood draw or urinalysis was performed at law enforcement's request or order.  Rather, toxicology testing was performed as part of the health care provided to Russell.

4.  … Ritter obtained the relevant grand jury subpoena in accordance with Toledo Police Department's policies and procedures.

The trial court held a hearing on the motion to suppress and then granted the motion.  The State appealed.

### III.  Standard of Review

Our review of a decision granting or denying a motion to suppress presents a mixed question of law and fact. *State v. Burnside*, . . . 2003 - Ohio - 5372, . . . ¶ 8. The trial court assumes the role of trier of fact and is in the best position to resolve factual discrepancies and to evaluate the credibility of witnesses. *Id*., citing *State v. Mills*, 62 Ohio St.3d 357, 366 . . . (1992).  We will accept the trial court's findings of fact if they are supported by competent, credible evidence.  *Id*., citing *State v. Fanning*, 1 Ohio St.3d 19 . . . (1982). We must then determine, without deference to the trial court's conclusion, whether the facts satisfy the applicable legal standard. *Id*., citing *State v. McNamara*, 124 Ohio App.3d 706 . . . (4th Dist. 1997).

*State v. Baker*, 2014-Ohio-2564, ¶ 6 (6th Dist.).  As the parties have stipulated to the facts in this case, we will review the trial court's legal conclusions de novo.

---

[1]  The subpoena is before us for review.  While it lists "Aaron Riter," a sergeant/accident investigator, as the requestor, it is signed by Jeffrey D. Lingo, Chief of the Special Units Division of the Lucas County Prosecutor's Office and also signed by a judge.

3.

### IV.  Constitutionality of the Search (First and Second Assignments of Error)

### A.  Arguments

{¶ 3}  Both the first and second assignments of error pertain to whether obtaining Russell's medical records through a subpoena instead of a warrant was constitutional under the Fourth Amendment.  We will therefore consider them together.[2]

{¶ 4}  In the first assignment of error, the State argues that the trial court erred in concluding that the Fourth Amendment requires law enforcement to obtain a search warrant to receive toxicology test results as the State maintains that it may use a subpoena without a showing of probable cause.  The State also asserts that Ohio law permits the disclosure of the medical records in the following circumstances: when test results are requested with the submission of a written statement that a criminal investigation has begun; health care providers are required by law to report certain injuries to law enforcement; and pharmaceutical records may be disclosed.  In addition to Ohio law, the State references an exception for law enforcement purposes in the Health Information Portability and Accountability Act ("HIPAA").  Further, the State insists that there is no binding precedent recognizing an expectation of privacy in medical records.

---

[2]  We note that the State's assigned errors pertain to Fourth Amendment, and not Article I, Section 14 of the Ohio Constitution, which "[i]n nearly identical language . . . 'affords the same protection as the Fourth Amendment in felony cases.'"  *State v. Rogers*, 2023-Ohio-2749, ¶ 12 (10th Dist.), citing *State v. Jones*, 2015-Ohio-483, ¶ 12.  Additionally, Russell did not make any arguments that the Ohio Constitution provides greater protections than the Fourth Amendment.  Thus, we limit our analysis to the Fourth Amendment.

4.

{¶ 5}   In its second assignment of error, the State contends that the trial court erred in interpreting the *Ferguson* and *McNeely* cases to create a reasonable expectation of privacy in toxicology test results under the Fourth Amendment and that many jurisdictions permit disclosure of medical records based on a grand jury subpoena.  The State also argues that the third-party doctrine, which provides that a person does not have a legitimate expectation of privacy in information voluntarily given to a third party, continues to be applicable.

## B.  Statutory Privilege vs. Constitutional Right

{¶ 6}   We first find it necessary to delineate the issue before us.  The State has made arguments relating to privilege: that medical records were not protected by privilege at common law, that any statutory privilege is narrow and to be strictly construed, and that an "error involving privilege is not a constitutional violation." However, Russell did not rely upon a statutory privilege to claim a constitutional right. There is a "difference between physician-patient privilege, which applies to admissibility of (properly obtained) evidence at trial, and the Fourth Amendment protection against the government's unauthorized invasion into the patient's medical records, which applies to the government's ability to obtain the evidence."  *State v. Little*, 2014-Ohio-4871, ¶ 38 (3d Dist.).  Accordingly, the issue here is a constitutional right, not a statutory privilege.

## C.  The Fourth Amendment

{¶ 7}   The trial court found that the warrantless search of Russell's medical records violated his Fourth Amendment right to be free from unreasonable searches and

5.

seizures. "The Fourth Amendment protects persons from 'unreasonable searches and seizures' by the government. Under the exclusionary rule, evidence seized in violation of the Fourth Amendment will result in its suppression." (Citations omitted.) *State v. Jackson*, 2004-Ohio-3206, ¶ 8. One way in "which government conduct may amount to … a search occurs when there is an official intrusion into a sphere in which there exists a reasonable expectation of privacy with an intent to obtain information." (Citations omitted.) *State v. Jackson*, 2022-Ohio-4365, ¶ 15. A search is unreasonable when police lack a valid warrant and no exception to the warrant requirement applies. *Id*. at ¶ 10. Here there is no dispute that obtaining the medical records was done to acquire information and that it was accomplished without a warrant. The issue is whether there is a reasonable expectation of privacy in those records.

## D. Reasonable Expectation of Privacy

{¶ 8} Whether Russell had a reasonable expectation of privacy in his medical records "turns on whether [he] ha[d] a subjective expectation of privacy and whether that expectation is one that society recognizes as reasonable." *State v. Eads*, 2020-Ohio-2805, ¶ 12 (1st Dist.).

### 1. *State v. Ferguson*

{¶ 9} In *Ferguson*, the United States Supreme Court stated that "[t]he reasonable expectation of privacy enjoyed by the typical patient undergoing diagnostic tests in a hospital is that the results of those tests will not be shared with nonmedical personnel without her consent." *Ferguson*, 532 U.S. at 78. The State argues that language is mere

6.

dicta, and that reliance on *Ferguson* is inappropriate as it is factually dissimilar and the issue in *Ferguson* was not whether the disclosure of existing medical records amounted to a search. While we agree that *Ferguson* is factually distinguishable, we find it relevant as it acknowledges the existence of a reasonable expectation of privacy to records such as the ones at issue here.

## 2. *State v. McNeely*

{¶ 10} The State further contends that the trial court misinterpreted the *McNeely* case when it construed *McNeely* to stand for the proposition that "warrantless searches are per se unreasonable unless one of the enumerated exceptions to the warrant requirement is applicable."

{¶ 11} In *McNeely*, without a warrant, a police officer directed a lab technician to take a sample of McNeely's blood despite McNeely's refusal to consent to a blood test. *McNeely*, 569 U.S. at 146. The Supreme Court declined the State's request that there be a per se rule for blood testing in drunk-driving cases because, as argued by the State, "exigent circumstances will necessarily exist because BAC evidence is inherently evanescent." *Id*. at 151-152. Instead, the Supreme Court held that there should be a case-by-case determination of the exigency, and that when officers can reasonably obtain a warrant before a blood draw "without significantly undermining the efficacy of the search, the Fourth Amendment mandates that they do so." *Id*. at 152.

{¶ 12} The Third District Court of Appeals aptly explained the relevance of *McNeely*, stating that *McNeely* "supports a holding that an OVI suspect's expectation of

7.

privacy should not be diminished easily." *Little*, 2014-Ohio-4871, at ¶ 33 (3d Dist.). Although acknowledging that *McNeely* was distinguishable and did not focus on the expectation of privacy, the Third District found it significant that "the Supreme Court refused to allow warrantless searches even though 'the privacy interest implicated by blood draws of drunk-driving suspects is relatively minimal' and the 'governmental interest in combating drunk driving' compelling. [*McNeely*] at 1564–1565. In spite of the recognized importance of preventing 'drunk driving,' the Supreme Court declined to depart from the warrant requirement absent exigent circumstances." *Id*. at ¶ 34.

{¶ 13} The *Little* court found *McNeely* instructive, in that it directs courts "to prevent the dilution of the warrant requirement in cases where a patient's federally recognized privacy interest in his or her medical records is at stake and no reasons exist to diminish that privacy interest." *Little* at ¶ 35. The *Little* court found no reason to diminish that privacy interest in "securely-stored medical records." *Id*. We agree with the *Little* court's analysis and find the trial court did not err in its interpretation of *McNeely* to the detriment of the State.

### 3. Other Relevant Caselaw

{¶ 14} Other Ohio appellate courts have also found a reasonable expectation of privacy in medical records held by a hospital pertaining to tests for drugs and alcohol. *See, e.g., State v. Clark*, 2014-Ohio-4873 (3d Dist.), *State v. Saunders*, 2017-Ohio-7348 (5th Dist.), *Eads*, 2020-Ohio-2805 (1st Dist.), *Rogers*, 2023-Ohio-2749 (10th Dist.). *But see City of Cleveland v. Dames*, 2003-Ohio-6054 (8th Dist.). While these decisions

8.

are not binding on this court, we find those concluding there was a reasonable expectation of privacy to be well-reasoned and persuasive. We note that the State has cited to a number of nonbinding cases rejecting arguments that there is a reasonable expectation of privacy in medical records, however, we do not find these cases persuasive.

### 4. State Laws Permitting Disclosure of Medical Records

{¶ 15} The State further asserts that certain laws allow for the disclosure of health records for law enforcement purposes and that, because they do, Russell could not have had a reasonable expectation of privacy in his medical records. The State cites to instances where Ohio law permits the disclosure of health records for law enforcement purposes as evidence that any expectation of privacy in the records would not be reasonable. These examples include requests made pursuant to R.C. 2317.027, the admission of evidence under R.C. 4511.19(D)(1)(a), laws requiring health care providers to report certain injuries to law enforcement, and cases permitting the disclosure of pharmaceutical records. The State also cites to an exception in HIPAA that allows disclosure of information for law enforcement purposes.

{¶ 16} With the possible exception of R.C. 2317.02, it does not appear that the State is suggesting that any of these statutes or cases are themselves controlling and sufficient to overcome Russell's Fourth Amendment challenge, rather it is the State's contention that their existence negates any reasonable expectation of privacy in Russell's medical records. Based on the above detailed reasons, we conclude that Russell did have

9.

a reasonable expectation of privacy in the subpoenaed records, however, we find it necessary to address R.C. 2317.02 as both the trial court and Russell stated that the State obtained Russell's records pursuant thereto, and the applicability of the statute has been argued by the parties.

### 5. R.C. 2317.02

{¶ 17} R.C. 2317.02, entitled Privileged Communications and Acts, reads in relevant part:

{¶ 18} The following persons shall not testify in certain respects:
. . .
(B)(1) A physician . . . concerning a communication made to the physician . . . by a patient in that relation or the advice of a physician . . . given to a patient, except as otherwise provided in … division (B)(2) ….
. . .
(2)(a) If any law enforcement officer submits a written statement to a health care provider that states that an official criminal investigation has begun regarding a specified person or that a criminal action or proceeding has been commenced against a specified person, that requests the provider to supply to the officer copies of any records the provider possesses that pertain to any test or the results of any test administered to the specified person to determine the presence or concentration of alcohol, a drug of abuse, a combination of them, a controlled substance, or a metabolite of a controlled substance in the person's whole blood, blood serum or plasma, breath, or urine at any time relevant to the criminal offense in question, and that conforms to section 2317.022 of the Revised Code, the provider, except to the extent specifically prohibited by any law of this state or of the United States, shall supply to the officer a copy of any of the requested records the provider possesses. If the health care provider does not possess any of the requested records, the provider shall give the officer a written statement that indicates that the provider does not possess any of the requested records.

{¶ 19} R.C. 2317.022(B) then specifies that a "Written Statement Requesting the Release of Records" be submitted to a health care facility "[i]f an official criminal

10.

investigation has begun regarding a person or if a criminal action or proceeding is commenced against a person" by "any law enforcement officer who wishes to obtain from any health care provider a copy of any records the provider possesses that pertain to any test or the result of any test administered to the person to determine the presence or concentration of alcohol, a drug of abuse, or alcohol and a drug of abuse in the person's blood, breath, or urine at any time relevant to the criminal offense, in question…" A health care provider receiving such a statement is then required to comply with R.C. 2317.02(B)(2) "relative to the written statement."

{¶ 20} We note that the State did not follow the procedure set forth in R.C. 2317.02 or 2317.022 to obtain Russell's records. It did not use the form required by R.C. 2317.022 and it requested records beyond those permitted by R.C. 2317.02, as the statute only refers to records pertaining to "any test or the results of any test administered to the specified person to determine the presence or concentration of alcohol, a drug of abuse, a combination of them, a controlled substance, or a metabolite of a controlled substance in the person's whole blood, blood serum or plasma, breath, or urine at any time relevant to the criminal offense in question."[3] Therefore, it does not appear that R.C. 2317.02 is applicable.

{¶ 21} We find that, even if R.C. 2317.02 were applicable, the statute specifically sets forth an exception to the requirement that a health care provider provide medical records when it is "specifically prohibited by any law of this state or of the United

---

[3] In oral argument, Russell's attorney stated that the hospital provided 2,156 pages of records in response to the subpoena.

States." This includes the Fourth Amendment of the United States Constitution, which prohibits unreasonable searches and seizures. *Rogers*, 2023-Ohio-2749 at ¶ 25 (10th Dist.). "Ohio's passage of [R.C. 2317.02(B)(2) and 2317.022] cannot strip away the protections of the Fourth Amendment." *Eads*, 2020-Ohio-2805 at ¶ 26 (1st Dist.).

{¶ 22} The State has cited to *State v. Rose*, 1998 WL 65497 (6th Dist. Feb. 6, 1998), where this court upheld the constitutionality of R.C. 2317.02(B). We find *Rose* inapplicable here. *Rose* was decided prior to *Ferguson* and the only issue considered there was whether R.C. 2317.02(B)(2) was unconstitutional. The case did not discuss whether a person has a reasonable expectation of privacy in his medical records and thus, is distinguishable.

### 6. Third-Party Doctrine

{¶ 23} The State additionally relies upon the third-party doctrine, which states that "a person has no legitimate expectation of privacy in information he voluntarily turns over to third parties." *State v. Carpenter*, 585 U.S. 296, 308 (2018), citing *Smith v. Maryland*, 442 U.S. 735, 743-44 (1979). The United States Supreme Court considered the third-party doctrine and held that "[a] person does not surrender all Fourth Amendment protection by venturing into the public sphere. To the contrary, 'what [one] seeks to preserve as private, even in an area accessible to the public, may be constitutionally protected.'" *Carpenter* at 310. The Supreme Court then "articulated 'a two-part analysis for determining when an individual has a reasonable expectation of privacy in information shared with another.' First, a court must consider 'the nature of

12.

the particular documents sought' to determine whether 'there is a legitimate "expectation of privacy" concerning their contents.' Second, a court must determine whether the third party's possession of the document resulted from 'voluntary exposure' by the person with the asserted privacy interest." (Citations omitted.) *Rogers* at ¶ 14 (10th Dist.).

{¶ 24} The Ohio Supreme Court has considered the third-party doctrine in the wake of *Carpenter* and found *Carpenter* to be "a narrow decision" that did "not disturb the application" of the third-party doctrine as previously set forth in the United States Supreme Court cases of *United States v. Miller*, 425 U.S. 435, 442 (1976) and *Smith* at 740. *State v. Diaw*, 2025-Ohio-2323, ¶ 30.

{¶ 25} We find the third-party doctrine inapplicable here. With respect to the *nature of the documents*, we note that the State sought not only the results of a drug or alcohol test, but all medical records relating to injuries sustained in the automobile accident, including records containing information regarding the "[d]iagnosis of injuries as a result of the automobile accident that occurred on 1-12-23, and toxicology reports." It was noted in *Eads* that records containing information about the use of alcohol, drugs of abuse, and controlled substances "exposed too much about [a defendant's] private life" and thus, are "deserving of protection because of their 'deeply revealing nature." *Eads*, 2020-Ohio-2805, at ¶ 32 - 33 (1st Dist.). We note the records in this case go beyond the scope of the records requested in *Eads*. Similar records to those requested here were sought in *Rogers*, where law enforcement requested "[a]ny and all medical records regarding emergency room treatment and inpatient treatment" of Rogers. There the

Tenth District Court of Appeals found that Rogers had a reasonable expectation of privacy in the records, stating that "[i]t is difficult to imagine documents of a more personal nature than medical records, which the law protects in many ways." *Rogers* at ¶ 17. When considering the specific nature of the documents requested here, we agree with the *Rogers* court and again find that Russell had a reasonable expectation of privacy in his medical records.

{¶ 26} With respect to the *voluntariness* of the exposure of those records, the courts in both *Eads* and *Rogers* concluded that such records were not voluntarily exposed. In *Eads*, the court reasoned that "it was the hospital's protocol to collect the information so that it could provide the appropriate medical treatment" and that there was "no evidence that Eads actually consented to the sharing of the results." *Eads* at ¶ 36. Similarly, in *Rogers*, the court found no evidence disputing the trial court's finding of "'no evidence' showing that the testing was 'anything other than a routine test required for treatment, or that by providing a sample he was waiving his Fourth Amendment rights.'" *Rogers* at ¶ 19. We agree with the courts in *Eads* and *Rogers* and we find no evidence here that the exposure of Russell's records was voluntary. Therefore, we do not find the third-party doctrine applicable.

### 7. Sufficiency of Subpoena

{¶ 27} The State has additionally argued that a warrant is not necessary because the use of a subpoena is sufficient and does not require a probable cause showing. The State points out that an Ohio grand jury is required to investigate all matters within its

14.

authority and has the power to issue subpoenas and compel the production of documents. The State cites to, inter alia, a statement in *Carpenter*, 585 U.S. at 319, that "[t]he Government will be able to use subpoenas to acquire records in the overwhelming majority of investigations" and the State cites to *Donovan v. Lone Steer, Inc.,* 464 U.S. 408 (1984) to support its contention that "a subpoena does not violate constitutional rights when it is 'sufficiently limited in scope, relevant in purpose, and specific in directive so that compliance with not be unreasonably burdensome.'"

{¶ 28} We note, however, *Donovan* is not factually similar to this case, and other statements in *Carpenter* are more relevant to the instant case. With respect to the first statement, that subpoenas will generally be sufficient, the *Carpenter* court further explained that "a warrant is required in the rare case where the suspect has a legitimate privacy interest in records held by a third party," and that "[i]f the choice to proceed by subpoena provided a categorical limitation on Fourth Amendment protection, no type of record would ever be protected by the warrant requirement." *Carpenter* at 318 - 319. Additionally, the *Carpenter* majority responded to the dissent's citation to *Donovan* and other cases, stating that "this Court has never held that the Government may subpoena third parties for records in which the suspect has a reasonable expectation of privacy." *Carpenter* at 317. The *Carpenter* court also commented that "[w]hen an individual 'seeks to preserve something as private,' and his expectation of privacy is 'one that society is prepared to recognize as reasonable,' . . . official intrusion into that private sphere generally qualifies as a search and requires a warrant supported by probable

cause." *Id*. at 304, citing *Smith* at 740. *See also In re Grand Jury Proceeding of John Doe*, 2016-Ohio-8001, ¶ 24, quoting *United States v. Calandra*, 414 U.S. 338, 346 (1974). ("[T]he grand jury's subpoena power is not unlimited. It may consider incompetent evidence, but it may not itself violate a valid privilege, whether established by the Constitution, statutes, or the common law."). Based upon this language, we do not find that the issuance of a subpoena permits the State to avoid the requirements of the Fourth Amendment. Although the State has cited to cases in other jurisdictions where the disclosure of medical data through the use of a subpoena was permitted, we find these cases are not controlling and are distinguishable.

### E. Necessity of a Warrant

{¶ 29} For the reasons discussed above, we find that Russell had a reasonable expectation of privacy in his medical records. As such, the State intruded "into a sphere in which there exists a reasonable expectation of privacy with an intent to obtain information," and the procurement of Russell's medical records qualified as a search under the Fourth Amendment. *See Jackson*, 2022-Ohio-4365, at ¶ 15. This search was conducted without a warrant. "[W]arrantless searches are typically unreasonable where 'a search is undertaken by law enforcement officials to discover evidence of criminal wrongdoing.' Thus, '[i]n the absence of a warrant, a search is reasonable only if it falls within a specific exception to the warrant requirement.'" (Citations omitted.) *Carpenter* at 316 - 17. Here, the State has not alleged any exceptions to the warrant requirement apply. Thus, we find the State's first and second assignments of error not well-taken.

16.

### V. Applicability of the Good Faith Exception (Third Assignment of Error)

{¶ 30} In its third assignment of error, the State contends that, even if a warrant was otherwise required, law enforcement acted in good faith in obtaining the subpoena and therefore the good faith exception to the exclusionary rule applies.

{¶ 31} "The exclusionary rule is a judicially created remedy for Fourth Amendment violations." *State v. Castagnola*, 2015-Ohio-1565, ¶ 92. However, application of the rule is not automatic. *Greer v. Bradshaw*, 2016 WL 3555427, *8 (N.D.Ohio June 30, 2016). The good faith exception permits admission of evidence if a law enforcement officer believes in good faith that his or her actions are in compliance with the Fourth Amendment. *Id.*, citing *Davis v. United States*, 564 U.S. 229, 239 (2011). This exception includes cases in which the officer conducted a search "in objectively reasonable reliance on binding judicial precedent." *Id.*, citing *Davis* at 241. "Because the exclusionary rule's purpose is to deter unlawful police conduct, evidence should be suppressed "'only if it can be said that the law enforcement officer had knowledge, or may properly be charged with knowledge, that the search was unconstitutional under the Fourth Amendment.'"" *State v. Dibble*, 2020-Ohio-546, ¶ 18, quoting *United States v. Leon*, 468 U.S. 897, 919 (1984).

{¶ 32} The State contends that "[r]eliance upon statutory and regulatory provisions which have not been invalidated should not result in suppression," and that the officer should be permitted to rely on "the grand jury's subpoena power, coupled with the lack of binding precedent in state or federal courts."

17.

{¶ 33} First, as noted above, the State did not follow the procedure sent forth in R.C. 2317.02(B)(2), and thus, it was not reasonable for the State to rely upon that *statute*. Next, we do not find it was reasonable to rely upon the *subpoena* in light of the state of the law at the time the subpoena was issued. Prior to its issuance, *Ferguson* stated that there was a reasonable expectation of privacy in medical records, *Carpenter* commented that "warrantless searches are typically unreasonable where 'a search is undertaken by law enforcement officials to discover evidence of criminal wrongdoing'" and the majority of courts in Ohio that considered the issue in similar contexts to the one here found a reasonable expectation of privacy in a patient's medical records. In addition, we note that the subpoena requesting Russell's securely-stored medical records was made by the prosecutor's office.

{¶ 34} Courts have considered whether prosecutors and other government attorneys acted in good faith when determining whether the good faith exception to the exclusionary rule applies. *See, e.g., United States v. Clayborne*, 425 F.Supp.3d 1047, 1051 - 1052 (E.D.Wis. 2019); *United States v. Davis*, 785 F.3d 498, 518, fn. 20 (11th Cir. 2015), *abrogated on other grounds by Carpenter*; *United States v. Griffin*, 2022 WL 2072042, *5 (E.D.Mich. June 8, 2022). Here, we find that the prosecutor may properly be charged with knowledge of the state of the law and, based upon the law at the time the subpoena was issued, it was not reasonable for the prosecutor to rely upon a subpoena. For these reasons, we do not find the good faith exception applicable.

{¶ 35} Accordingly, the State's third assignment of error is not well-taken.

18.

## VI.  Conclusion

**{¶ 36}** The judgment of the Lucas County Court of Common Pleas is affirmed.

Pursuant to App.R. 24, the State is hereby ordered to pay the costs incurred on appeal.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27.
*See also* 6th Dist.Loc.App.R. 4.

Thomas J. Osowik, J.

_____
JUDGE

Christine E. Mayle, J.

_____

Myron C. Duhart, J.                                    JUDGE
CONCUR.

_____
JUDGE

This decision is subject to further editing by the Supreme Court of
Ohio's Reporter of Decisions.  Parties interested in viewing the final reported
version are advised to visit the Ohio Supreme Court's web site at:
http://www.supremecourt.ohio.gov/ROD/docs/.