[Cite as *State v. Gubanich*, 2022-Ohio-2815.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF MEDINA | ) | |

| | |
|---|---|
| STATE OF OHIO | C.A. No.    21CA0054-M |
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| JAMES F. GUBANICH | MEDINA MUNICIPAL COURT COUNTY OF MEDINA, OHIO |
| Appellant | CASE No.    20TRC04829 |

DECISION AND JOURNAL ENTRY

Dated: August 15, 2022

CALLAHAN, Judge.

**{¶1}** Defendant-Appellant, James Gubanich, appeals from the judgment of the Medina Municipal Court, denying his motion to suppress. This Court affirms.

I.

**{¶2}** Mr. Gubanich was involved in an accident while riding his motorcycle in Hinckley Township. Officer Jessica Parente, the officer who responded to the scene, found him lying on the ground with a severe head injury. She remained on scene while paramedics arrived and tended to Mr. Gubanich. During that time, the officer detected a strong odor of alcohol coming from Mr. Gubanich's person.

**{¶3}** Mr. Gubanich was taken directly to MetroHealth Medical Center ("MetroHealth") in Cleveland for treatment. While he was there, MetroHealth drew his blood. Rather than secure a warrant to obtain the results of Mr. Gubanich's blood test, Officer Parente requested a copy of the results directly from MetroHealth pursuant to R.C. 2317.02(B)(2)(a). MetroHealth later

provided her with those test results, and the results showed that Mr. Gubanich had a blood alcohol concentration in excess of the legal limit.

{¶4} Mr. Gubanich was charged with operating a vehicle under the influence of alcohol ("OVI"), OVI with a prohibited blood alcohol concentration, and failure to control. He moved to suppress the test results Officer Parente had received from MetroHealth, arguing that R.C. 2317.02(B)(2)(a) was unconstitutional and that the officer had obtained his results in violation of his Fourth Amendment rights. The trial court held a motion hearing, which consisted entirely of legal arguments. Following the hearing, the trial court issued a written decision.

{¶5} The trial court rejected Mr. Gubanich's argument that R.C. 2317.02(B)(2)(a) was unconstitutional. While the court agreed that Officer Parente had violated Mr. Gubanich's Fourth Amendment rights by obtaining his blood test results without a warrant, the court refused to apply the exclusionary rule. The court found that Officer Parente had acted in good faith when she relied on R.C. 2317.02(B)(2)(a) to secure the blood test results. Consequently, it denied Mr. Gubanich's motion to suppress.

{¶6} Following the denial of his motion to suppress, Mr. Gubanich pleaded no contest on all charges. The trial court merged his two OVI offenses as allied offenses of similar import and sentenced him on the R.C. 4511.19(A)(1)(a) violation. Upon motion, the court agreed to stay the execution of its sentence so Mr. Gubanich might appeal from its ruling on his motion to suppress.

{¶7} Mr. Gubanich now appeals from the trial court's judgment and raises two assignments of error for this Court's review. For ease of analysis, this Court reorders the assignments of error.

II.

**{¶8}** Before turning to the merits of the appeal, this Court pauses to address its decision in *State v. Palacios*, 9th Dist. Lorain No. 17CA011093, 2018-Ohio-3523. In *Palacios*, this Court determined that, by pleading no contest to an OVI charge under R.C. 4511.19(A)(1)(a), a defendant admitted he had operated a vehicle under the influence. *Palacios* at ¶ 8. Because the defendant had only been convicted of violating R.C. 4511.19(A)(1)(a), this Court held that his admission resulted in a forfeiture of his argument on appeal that the trial court had erred by not suppressing his blood test results. *Id.* Even so, this Court acknowledged that the record showed the defendant had predicated his no contest plea upon his, his counsel's, and the trial court's erroneous assumption that he would be able to appeal from the denial of his motion to suppress. *Id.* at ¶ 9-10. This Court resolved the appeal by sua sponte vacating the defendant's plea and remanding the matter to the trial court for further proceedings. *Id.* at ¶ 10-11.

**{¶9}** Much like the defendant in *Palacios*, Mr. Gubanich pleaded no contest to his OVI charges following an unfavorable suppression ruling. Because the trial court merged his OVI counts at sentencing, he was only convicted of violating R.C. 4511.19(A)(1)(a). Were this Court to apply *Palacios*, that decision would prevent us from reaching the merits of Mr. Gubanich's assignments of error. This Court would be forced to conclude that Mr. Gubanich forfeited his suppression arguments when he pleaded no contest. *See id.* at ¶ 8. Upon further reflection and review of recent case law issued by the Ohio Supreme Court, however, this Court determines that *Palacios* was wrongly decided. *See generally Westfield Ins. Co. v. Galatis*, 100 Ohio St.3d 216, 2003-Ohio-5849, paragraph one of the syllabus.

**{¶10}** Traf.R. 11(G) provides that a no contest plea "does not preclude a defendant from asserting upon appeal that the trial court prejudicially erred in ruling on * * * a pretrial motion to

suppress evidence." "Inherent in that rule's language is the notion that when a judgment stemming from a no-contest plea is appealed, it is permissible for the appellate court to review the claimed error for prejudice, just like any other error."[1] *State v. LaRosa*, 165 Ohio St.3d 346, 2021-Ohio-4060, ¶ 41. For a defendant to prevail on appeal following his no contest plea, the trial court's suppression ruling must have had a material effect on his decision to plead. *Id.* at ¶ 50-56.

> Courts often will not have a full picture of the evidence following a hearing on a motion to suppress, and it is difficult to ascertain the extent to which an erroneous judgment on a suppression motion might have affected the defendant's decision to plead no contest. It is also important to remember that when an alleged error is properly preserved, *the state has the burden of proving beyond a reasonable doubt the absence of prejudice*, which would likely be difficult to establish in most appeals stemming from a suppression ruling and subsequent no-contest plea, particularly when the court does not have a sufficient picture of the existing evidence to help it make that determination. *Indeed, regarding no-contest pleas, it might be the rare case in which a judgment erroneously denying a motion to suppress is determined to be harmless error*.

(Emphasis added.) *Id.* at ¶ 52.

**{¶11}** Both the plain language of Traf.R. 11(G) and the Ohio Supreme Court's recent decision in *LaRosa* make clear that a defendant does not forfeit his suppression challenge merely by entering a plea of no contest. A defendant may appeal from a trial court's suppression ruling and prevail if the court's erroneous ruling materially affected his decision to plead no contest. *Id.* at ¶ 50-56. Further, *LaRosa* makes clear that, when a defendant has properly preserved a suppression-related error, it is the *State's* burden to prove beyond a reasonable doubt that any error the court committed in its suppression ruling was harmless (i.e., that the defendant was not prejudiced by the ruling). *Id.* at ¶ 52. Because *Palacios* improperly presumed that the defendant therein forfeited his suppression argument by pleading no contest, it is overruled.

---

[1] Although *LaRosa* interpreted Crim.R. 12(I), the plain language of that rule is identical to the plain language of Traf.R. 11(G).

{¶12} Notably, the State has made no attempt to argue that any error on the part of the trial court in overruling Mr. Gubanich's motion to suppress was harmless beyond a reasonable doubt. The State has responded to Mr. Gubanich's arguments on their merits. Moreover, because Mr. Gubanich's suppression hearing only consisted of legal arguments and there is no transcript of the plea hearing, the record contains extremely limited information about the evidence against Mr. Gubanich. Given the dearth of evidence in the record and the State's response to Mr. Gubanich's arguments, this Court will proceed to a merits review rather than attempt to conduct a review for harmless error.

### ASSIGNMENT OF ERROR NO. 2

THE TRIAL COURT ERRED IN DENYING [MR. GUBANICH'S] MOTION TO SUPPRESS WHEN OHIO REV. CODE §2317.02(B)(2)(a) WAS FACIALLY UNCONSTITUTIONAL AND THE OFFICER COULD NOT HAVE REASONABLY RELIED IN GOOD FAITH UPON IT IN OBTAINING [MR. GUBANICH'S] BLOOD TEST RECORDS[.]

{¶13} In his second assignment of error, Mr. Gubanich argues that the trial court erred when it denied his motion to suppress because Officer Parente relied on an unconstitutional statute to seize his blood test results. Specifically, Mr. Gubanich argues that R.C. 2317.02(B)(2) is facially unconstitutional because it conflicts with the Fourth Amendment. For the following reasons, this Court rejects his argument.

{¶14} While this Court's review of a ruling on a motion to suppress generally involves a mixed question of law and fact, *see State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶ 8, Mr. Gubanich's second assignment of error only concerns a question of law. He challenges the trial court's legal conclusion that R.C. 2317.02(B)(2) is constitutional on its face. He has not

challenged the statute as applied to him or claimed that any factual questions exist.[2]  Accordingly, this Court will limit its review to the legal issue he has presented and independently determine whether the trial court reached the correct legal conclusion.  *See id.*, citing *State v. McNamara*, 124 Ohio App.3d 706 (4th Dist.1997).

{¶15}  Statutes are afforded a strong presumption of constitutionality.  *State v. Collier*, 62 Ohio St.3d 267, 269 (1991).  "[I]f at all possible, [they] must be construed in conformity with the Ohio and United States Constitutions."  *Id.*  A party asserting that a statute is unconstitutional must prove that the statute is unconstitutional beyond a reasonable doubt.  *Id.*  The party must show that "there is a clear conflict between the legislation in question and some particular provision or provisions of the Constitution."  *City of Xenia v. Schmidt*, 101 Ohio St. 437 (1920), syllabus.  If the party challenges the statute on its face, he "must demonstrate that there is no set of circumstances in which the statute would be valid."  *Groch v. Gen. Motors Corp.*, 117 Ohio St.3d 192, 2008-Ohio-546, ¶ 26.  "The fact that a statute might operate unconstitutionally under some plausible set of circumstances is insufficient to render it wholly invalid."  *Harrold v. Collier*, 107 Ohio St.3d 44, 2005-Ohio-5334, ¶ 37.

{¶16}  R.C. 2317.02(B) governs the physician-patient privilege in Ohio.  *State v. Moore*, 9th Dist. Lorain No. 00CA007587, 2001 WL 111559, *2 (Feb. 7, 2001).  The statute "is designed to create an atmosphere of confidentiality" and to encourage patients to freely share and

---

[2] Mr. Gubanich's second assignment of error includes one sentence in which he avers that the good-faith exception to the exclusionary rule does not apply because R.C. 2317.02(B)(2) is patently unconstitutional.  To the extent that sentence could be construed as an as-applied challenge, this Court declines to address the argument in the context of Mr. Gubanich's second assignment of error.  The applicability of the good-faith exception is the focal point of Mr. Gubanich's first assignment of error.  Accordingly, this Court will address the applicability of the good-faith exception in its discussion of the first assignment of error.  *See* Discussion of Assignment of Error Number One, *infra*.

discuss relevant information with their treating physicians. *State Med. Bd. of Ohio v. Miller*, 44 Ohio St.3d 136, 139-140 (1989). Because it is a statutory privilege, the physician-patient privilege is to be "strictly construed against the party seeking to assert it * * *." *Ward v. Summa Health Sys.*, 128 Ohio St.3d 212, 2010-Ohio-6275, ¶ 15. "By carving out a number of exceptions, the General Assembly has made clear that the physician-patient privilege is not absolute." *Torres Friedenberg v. Friedenberg*, 161 Ohio St.3d 98, 2020-Ohio-3345, ¶ 19.

{¶17} R.C. 2317.02(B)(2)(a) provides, in relevant part, as follows:

> If any law enforcement officer submits a written statement to a health care provider that states that an official criminal investigation has begun regarding a specified person or that a criminal action or proceeding has been commenced against a specified person, that requests the provider to supply to the officer copies of any records the provider possesses that pertain to any test or the results of any test administered to the specified person to determine the presence or concentration of alcohol * * * in the person's whole blood, blood serum or plasma, * * * at any time relevant to the criminal offense in question, and that conforms to [R.C. 2317.022], the provider, except to the extent specifically prohibited by any law of this state or of the United States, shall supply to the officer a copy of any of the requested records the provider possesses.

The foregoing provision was adopted by the General Assembly in 1994. *See State v. Mayl*, 106 Ohio St.3d 207, 2005-Ohio-4629, ¶ 54, citing 145 Ohio Laws, Part III, 5460. Before that time, "blood-alcohol tests were not available in criminal prosecutions unless the [physician-patient] privilege was waived by a defendant." *Mayl* at ¶ 54. *See also State v. Wash*, 9th Dist. Lorain Nos. 90CA004802, 90CA004803, 1990 WL 154728, *2 (Oct. 10, 1990) (examining prior version of R.C. 2317.02(B) and determining that blood-alcohol test was a communication protected by the physician-patient privilege). R.C. 2317.02(B)(2)(a) deems the physician-patient privilege waived as a matter of law when law enforcement seeks to obtain relevant test results upon a proper written request. *Mayl* at ¶ 54-55.

{¶18} Mr. Gubanich argues that R.C. 2317.02(B)(2) is unconstitutional on its face because it conflicts with the Fourth Amendment.[3] While the Fourth Amendment forbids unreasonable searches and seizures and only allows warrants to issue upon probable cause, Mr. Gubanich argues, R.C. 2317.02(B)(2)(a) allows law enforcement officials to obtain health care records upon written request without a warrant or showing of probable cause. He claims that the statute usurps the role of the judiciary. He further claims that there are no circumstances under which the statute could be deemed constitutionally sound.

{¶19} Upon review, this Court cannot conclude that Mr. Gubanich has established, beyond a reasonable doubt, that R.C. 2317.02(B)(2) is facially unconstitutional and that "there is no set of circumstances in which the statute would be valid." *Groch*, 117 Ohio St.3d 192, 2008-Ohio-546, at ¶ 26. *See also Collier*, 62 Ohio St.3d at 269. "R.C. 2317.02(B)(2) simply waives patient-physician privilege when law enforcement seeks to obtain certain test results." *Mayl* at ¶ 55. Mr. Gubanich has failed to point this Court to a single case wherein the statute was found to be unconstitutional on its face. *See* App.R. 16(A)(7). One of the cases he cited did not contain a facial challenge to the statute. *See State v. Eads*, 1st Dist. Hamilton Nos. C-190213, C-190214, C-190215, 2020-Ohio-2805 (considering R.C. 2317.02(B)(2)(a) as applied and determining that the defendant had a reasonable expectation of privacy in his test results). Another case contained an express qualification, cautioning the reader that the opinion was not a comment on the constitutionality of the statute. *State v. Saunders*, 5th Dist. Morrow No. 17CA0001, 2017-Ohio-7348, ¶ 31, 32 (noting that the court's holding did not "mean the statutory scheme at issue [was]

---

[3] While Mr. Gubanich cites both the Fourth Amendment and Article I, Section 14 of the Ohio Constitution in his brief, he has not argued that his constitutional rights are greater under the Ohio Constitution. Accordingly, this Court limits its discussion to the Fourth Amendment. *See State v. Kinney*, 83 Ohio St.3d 85, 87 (1998) ("Section 14, Article I of the Ohio Constitution is nearly identical in its language, and its protections are coextensive with its federal counterpart.").

unconstitutional"). A third case specifically overruled the defendant's argument that R.C. 2317.02(B)(2)(a) was unconstitutional. *State v. Little*, 3d Dist. Auglaize No. 2-13-28, 2014-Ohio-4871, ¶ 43-44. Further, at least two other districts have rejected arguments that the statute is unconstitutional. *See City of Cleveland v. Dames*, 8th Dist. Cuyahoga No. 82980, 2003-Ohio-6054, ¶ 3-7; *State v. Rose*, 6th Dist. Lucas No. L-96-165, 1998 WL 65497, *3 (Feb. 6, 1998). Mr. Gubanich's unsupported claim that R.C. 2317.02(B)(2) violates the Fourth Amendment is insufficient to prove that the statute is unconstitutional beyond a reasonable doubt. Even if the statute "might operate unconstitutionally under some plausible set of circumstances," that fact alone "is insufficient to render it wholly invalid." *Harrold*, 107 Ohio St.3d 44, 2005-Ohio-5334, at ¶ 37. Mr. Gubanich has failed to overcome the strong presumption that the statute is constitutional. *See Collier* at 269. Accordingly, his second assignment of error is overruled.

## ASSIGNMENT OF ERROR NO. 1

THE TRIAL COURT ERRED WHEN IT FOUND THAT THE STATE OF OHIO ACTED IN GOOD FAITH RELIANCE UPON OHIO REV. CODE §2317.02(B)(2)(a) BY OBTAINING [MR. GUBANICH'S] BLOOD TEST MEDICAL RECORDS WITHOUT A WARRANT CONSIDERING THE UNITED STATES SUPREME COURT'S DECISION IN *CARPENTER V. UNITED STATES*, 138 U.S. 2206 (2018) AND OHIO APPELLATE COURT DECISIONS[.]

{¶20} In his first assignment of error, Mr. Gubanich argues that the trial court erred when it denied his motion to suppress on the basis that Officer Parente acted in good faith. Specifically, he argues that Officer Parente could not have reasonably relied upon R.C. 2317.02(B)(2) to secure his blood test results because the statute is clearly unconstitutional and preexisting case law supports the conclusion that individuals have a legitimate expectation of privacy in their health records. For the following reasons, this Court rejects his argument.

{¶21} As previously noted, this Court's review of a trial court's ruling on a motion to suppress involves a mixed question of law and fact. *Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, at ¶ 8. "When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses." *Id.*, citing *State v. Mills*, 62 Ohio St.3d 357, 366 (1992). Thus, a reviewing court "must accept the trial court's findings of fact if they are supported by competent, credible evidence." *Burnside* at ¶ 8. "Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard." *Id.*, citing *McNamara*, 124 Ohio App.3d 706.

{¶22} Because the hearing on Mr. Gubanich's motion to suppress was limited to legal arguments, the record contains few details about the circumstances surrounding Officer Parente's request for Mr. Gubanich's blood test results. In its decision, the trial court primarily relied on the facts alleged in Mr. Gubanich's written motion. The court found that Mr. Gubanich was involved in a single vehicle accident while riding his motorcycle and sustained a "severe laceration/scalp tearing injury to his head." While Mr. Gubanich was being treated at the scene, the court found, Officer Parente detected a strong odor of alcohol coming from his person. The court found that, after Mr. Gubanich was transferred to MetroHealth for treatment, Officer Parente made a request for his medical records, pursuant to R.C. 2317.02(B)(2), and did not secure a warrant for those results.

{¶23} Notably, the record contains conflicting statements about the specific course of action Officer Parente took after Mr. Gubanich's accident. In Mr. Gubanich's written motion, he claimed that Officer Parente declined to go to MetroHealth and chose to fax the hospital a written request for his medical records. At the suppression hearing, however, the prosecutor advised the

court that Officer Parente had driven to MetroHealth and had requested a copy of Mr. Gubanich's records in person. The trial court did not address the foregoing discrepancy in its decision, and neither party has referenced it on appeal. Because it is not dispositive of the specific issue raised herein, this Court need not resolve the conflict. It is undisputed that, however she might have done so, Officer Parente made a written request for Mr. Gubanich's test results pursuant to R.C. 2317.02(B)(2) and did not secure a warrant for those results. Consequently, this Court will accept that factual finding as true and consider the trial court's legal conclusion in light of that finding. *See Burnside* at ¶ 8, citing *McNamara*, 124 Ohio App.3d 706.

{¶24} The trial court found that Mr. Gubanich had a legitimate expectation of privacy in his blood test results, that R.C. 2317.02(B)(2) did not override the Fourth Amendment's warrant requirement, and that Mr. Gubanich's rights were violated when Officer Parente seized his test results without a warrant. Even so, the trial court declined to apply the exclusionary rule. The court found that Officer Parente acted in good faith when she relied on R.C. 2317.02(B)(2) to seize the test results. The court noted that the plain language of the statute authorized the action Officer Parente took, there was no controlling authority warning her against relying on the statute in lieu of a warrant, and decisions from other appellate districts had not materially diminished the uncertainty surrounding the issue. The court concluded that Officer Parente could not properly be charged with knowledge that her seizure of Mr. Gubanich's test results was unconstitutional. Consequently, it denied Mr. Gubanich's motion to suppress.

{¶25} Mr. Gubanich argues that the trial court erred when it determined that the good-faith exception applied. He argues that Officer Parente could not reasonably have relied on R.C. 2317.02(B)(2) because the statute is clearly unconstitutional. According to Mr. Gubanich, the United States Supreme Court has recognized that individuals have a privacy interest not only in

their health records but also in other personal records in the possession of third parties. *See Ferguson v. City of Charleston*, 532 U.S. 67 (2001) (warrant required before state hospital may perform urine screens on pregnant women for the purpose of identifying crack cocaine users and sharing that information with law enforcement); *Carpenter v. United States*, 585 U.S. ___, 138 S.Ct. 2206 (2018) (warrant required before law enforcement may obtain cell phone records that track a person's physical movements through cell-site location information). Further, he asserts, other Ohio appellate districts have recognized that R.C. 2317.02(B)(2) does not obviate the need for officers to obtain a warrant before seizing health records. *See, e.g., Saunders*, 2017-Ohio-7348, at ¶ 16-32; *Little*, 2014-Ohio-4871, at ¶ 38-40. Because Officer Parente either knew or should have known that he had a privacy interest in his blood test results and that R.C. 2317.02(B)(2) was unconstitutional, Mr. Gubanich argues, she did not act in good faith when she seized his test results without a warrant.

{¶26} This Court begins by noting that the issue of whether R.C. 2317.02(B)(2) is unconstitutional as applied to Mr. Gubanich is not before us. Nor is the issue of whether he has a legitimate expectation of privacy in his blood test results. The only issue before this Court is whether the trial court erred when it determined that Officer Parente acted in good-faith reliance on R.C. 2317.02(B)(2). While the State invites us to broaden our review and affirm the trial court's decision on other grounds (i.e., that Mr. Gubanich does not have a reasonable expectation of privacy in his tests results), this Court declines to do so. *See State v. Adamson*, 83 Ohio St.3d 248, 251 (1998) (declining invitation to rule upon specific issue when "it [was] not necessary for [the Supreme Court] to rule on [the] matter to resolve the case"). Instead, for purposes of this decision, we assume without deciding that Mr. Gubanich had a reasonable expectation of privacy in his results and concern ourselves "solely with whether [Officer Parente] acted in good-faith reliance

upon an apparently valid statute." *Illinois v. Krull*, 480 U.S. 340, 357 (1987), fn. 13. *See also State v. Scott*, 9th Dist. Lorain Nos. 15CA010844, 15CA010846, 2017-Ohio-358, ¶ 13-14 (assuming warrant was improperly issued and limiting review to application of the good-faith exception).

**{¶27}** "The exclusionary rule is a judicially created remedy for Fourth Amendment violations." *State v. Castagnola*, 145 Ohio St.3d 1, 2015-Ohio-1565, ¶ 92. It "serves to protect Fourth Amendment rights through its deterrent effect rather than creating a personal constitutional right * * *." *Scott* at ¶ 12. Thus, the question of "[w]hether the exclusionary rule's remedy of suppression is appropriate in a particular context is a separate analysis from whether there has been a Fourth Amendment violation." *State v. Hoffman*, 141 Ohio St.3d 428, 2014-Ohio-4795, ¶ 24. Suppression is appropriate only if it "will create a sufficient deterrent effect to prevent future violations of the Fourth Amendment and Article I, Section 14 [of the Ohio Constitution]." *Id.* at ¶ 26. *See also Castagnola* at ¶ 96 ("The purpose of the exclusionary rule is to deter police misconduct.").

**{¶28}** "The United States Supreme Court has applied the good-faith exception * * * to searches conducted in reasonable reliance on subsequently invalidated statutes * * *." *State v. Banks-Harvey*, 152 Ohio St.3d 368, 2018-Ohio-201, ¶ 33, citing *Krull*, 480 U.S. 340. Good faith is examined under an objective standard that "requires officers to have a reasonable knowledge of what the law prohibits." *Banks-Harvey* at ¶ 37, quoting *United States v. Leon*, 468 U.S. 897, 919 (1984), fn. 20. The question is whether the provisions of the statute "are such that a reasonable officer should have known that the statute was unconstitutional." *Krull* at 355. "Unless a statute is clearly unconstitutional, an officer cannot be expected to question the judgment of the legislature that passed the law." *Id.* at 349-350.

{¶29} "Ohio appellate courts are in conflict as to whether the Fourth Amendment is violated by [an officer's] use of R.C. 2317.02 * * * to obtain, without a warrant or patient consent, medical records containing toxicology test results from a hospital that performed the tests for the purpose of medical treatment after a suspicious accident." *Eads*, 2020-Ohio-2805, at ¶ 23. Moreover, neither the Ohio Supreme Court, nor this Court has reviewed that issue in the context of a Fourth Amendment challenge. Mr. Gubanich suggests that it was unreasonable for Officer Parente to rely on R.C. 2317.02(B)(2) in light of the United States Supreme Court's decisions in *Ferguson v. City of Charleston* and *Carpenter v. United States*. Yet, those decisions either do not speak directly to the issue at hand or have yet to be widely applied in that manner.

{¶30} *Ferguson* recognized that the performance of a warrantless diagnostic test by a public hospital is unconstitutional if the hospital is performing the test for the purpose of obtaining evidence of criminal conduct to be shared with law enforcement. *Ferguson*, 532 U.S. at 69-70, 84-86. Yet, there is no indication in the record that Officer Parente directed MetroHealth to perform a blood test on Mr. Gubanich or that the hospital drew his blood for any reason other than medical treatment. Officer Parente only sought a copy of the test results from the tests MetroHealth had already performed for treatment purposes. *Ferguson* is not dispositive in that instance, so this Court cannot say that the case rendered Officer Parente's reliance on R.C. 2317.02(B)(2) objectively unreasonable. *See Banks-Harvey* at ¶ 33-37.

{¶31} *Carpenter* recognized that individuals maintain a reasonable expectation of privacy in cell phone data that tracks their physical movements even though the data is shared and maintained by wireless carriers. *Carpenter*, 138 S.Ct. at 2217. Much like Officer Parente relied on R.C. 2317.02(B)(2), the officers in *Carpenter* relied on the Stored Communications Act to compel the disclosure of the records at issue rather than obtaining a warrant. *See id.* at 2212.

While the Supreme Court struck down that compelled, warrantless disclosure, it also cautioned that its decision was not a pronouncement "that all orders compelling the production of documents will require a showing of probable cause." *Id.* at 2222. The Supreme Court specifically indicated that government officials would be able "to use subpoenas to acquire records in the overwhelming majority of investigations" and that warrants would be required only "in the rare case where the suspect has a legitimate privacy interest in records held by a third party." *Id.* Since its issuance in 2018, only one appellate court has considered *Carpenter* in the context of a request for medical records under R.C. 2317.02(B)(2). *See Eads*, 2020-Ohio-2805, at ¶ 28-30. Though the First District found that *Carpenter* supported the conclusion that defendants enjoy a reasonable expectation of privacy in their blood test results, *see id.* at ¶ 30, it also found that officers had reasonably relied on R.C. 2317.02(B)(2) when they secured Mr. Eads' test results, and thus, refused to apply the exclusionary rule, *see id.* at ¶ 41-42. Mr. Gubanich has not addressed the First District's conclusion that the good-faith exception applied to the search conducted in *Eads*.

{¶32} Upon review, this Court cannot conclude that the trial court erred when it refused to apply the exclusionary rule in this case. Because this case represents an issue of first impression for this Court, Officer Parente lacked any guidance from this appellate district at the time she requested Mr. Gubanich's blood test results pursuant to R.C. 2317.02(B)(2). Further, the Ohio Supreme Court has yet to consider the statute in the context of a Fourth Amendment challenge, analogous case law from the United States Supreme Court has yet to be widely interpreted, and other "Ohio appellate courts are in conflict" regarding the issue. *See id.* at ¶ 23. Assuming without deciding that Mr. Gubanich has a recognizable privacy interest in his blood test results and that R.C. 2317.02(B)(2) conflicts with that right, we cannot say that Officer Parente should have known the seizure she conducted was unconstitutional under the Fourth Amendment. *See Krull*, 480 U.S.

at 348-349. Based on the foregoing circumstances, the trial court did not err when it found that Officer Parente acted in good faith and denied Mr. Gubanich's motion to suppress. Consequently, Mr. Gubanich's first assignment of error is overruled.

## III.

**{¶33}** Mr. Gubanich's assignments of error are overruled. The judgment of the Medina Municipal Court is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Medina Municipal Court, County of Medina, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

_____
LYNNE S. CALLAHAN
FOR THE COURT

SUTTON, J.
<u>CONCURS.</u>

HENSAL, P. J.
<u>CONCURRING IN JUDGMENT ONLY.</u>

**{¶34}** I agree that Mr. Gubanich's conviction and sentence should be affirmed but for a different reason than the majority opinion. Because of the merger of the counts, Mr. Gubanich was only convicted of operating a vehicle under the influence of alcohol under Revised Code Section 4511.19(A)(1)(a). *State v. Whitefield*, 124 Ohio St.3d 319, 2010-Ohio-2, ¶ 24. Consequently, any arguments as to the prohibited-blood-alcohol-concentration offense are moot. *State v. Myers*, 154 Ohio St.3d 405, 2018-Ohio-1903, ¶ 137-138 (explaining that defendant's arguments about kidnapping offense were moot because it had merged with other offenses).

**{¶35}** Regarding the majority's discussion of *State v. Palacios*, 9th Dist. Lorain No. 17CA011093, 2018-Ohio-3523, in *Palacios*, this Court determined that Mr. Palacios could not challenge the State's acquisition of his blood test results because, in pleading no contest to a violation of Section 4511.19(A)(1)(a), he had admitted that he operated a vehicle under the influence of alcohol or a drug of abuse. *Id*. at ¶ 8. This Court concluded that Mr. Palacios forfeited his argument. *Id*. I agree with the majority opinion, however, that this Court should have determined that Mr. Palacios's argument was preserved under Criminal Rule 12(I).

{¶36} The majority opinion moves to a discussion of whether the trial court's denial of Mr. Gubanich's motion to suppress was harmless error, but further discussion of *Palacios* is required first. That is because, although Mr. Palacios's argument was preserved by rule, it was still not reviewable by this Court because it was moot. As the Second District Court of Appeals has explained, "[a] conviction under R.C. 4511.19(A)(1)(a) focuses on the conduct of the defendant and observations of the arresting officers, rather than the results of a chemical test or breathalyzer exam[.]" *State v. Gladman*, 2d Dist. Clark No. 2013 CA99, 2014-Ohio-2554, ¶ 24. "The results of the * * * test are not necessary or required to sustain the trial court's finding of guilt" to a violation of Section 4511.19(A)(1)(a), "[t]hus any issues regarding the admissibility of the results of the * * * exam are moot." *Id.*; *State v. Perry*, 12th Dist. Preble No. CA2017-01-002, 2017-Ohio-7214, ¶ 14 (concluding that blood draw results were immaterial to the case after defendant entered a plea of no contest to a violation of Section 4511.19(A)(1)(a). Accordingly, I believe that this Court correctly concluded in *Palacios* that it could not review Mr. Palacios's argument, albeit for an incorrect reason.

{¶37} The majority opinion follows its discussion of *Palacios* with a discussion of harmless error that is out of place, presumably because of where Criminal Rule 12(I), which is identical to Traffic Rule 11(G), is discussed in *LaRosa*. *State v. LaRosa*, 165 Ohio St.3d 346, 2021-Ohio-4060. In *LaRosa*, the Ohio Supreme Court first concluded that some of the evidence that Mr. LaRosa challenged in his motion to suppress should have been suppressed. *Id.* at ¶ 35. It then proceeded to discuss whether the error was reversible. It includes a brief discussion of Rule 12(I) to point out that, even though a plea of no contest preserves an issue for appeal, an appellate court is permitted "to review the claimed error for prejudice, just like any other error." *Id.* at ¶ 41. Mootness was not a concern in *LaRosa* because none of the offenses merged at sentencing.

**{¶38}** Adhering to the part of *LaRosa* that discusses Criminal Rule 12, the majority opinion goes from citing the decision in support of its explanation of why Mr. Gubanich's argument is preserved to a discussion of whether the State has established that any error by the trial court was harmless. Although the majority opinion does not go through a harmless error analysis at that stage of the opinion because of the limited record and the State's failure to argue harmless error, I do not agree that it would have been appropriate to skip over the essential step of requiring Mr. Gubanich to establish error first before analyzing for harmless error.

**{¶39}** In prior cases, if a defendant was under the mistaken impression that he would be able to raise his arguments on appeal after pleading no contest, this Court has vacated the conviction and plea and remanded the matter to the trial court for further proceedings. *E.g.*, *Palacios* at ¶ 10-11; *State v. Rondon*, 9th Dist. Summit No. 25447, 2011-Ohio-4938, ¶ 6. In this case, however, Mr. Gubanich only requested a transcript of the suppression hearing. Although Mr. Gubanich's written plea agreement provides that he intends to appeal the trial court's denial of his motion to suppress, it is unknown whether the appealability of that issue was discussed at the subsequent plea hearing. Accordingly, the record does not establish that Mr. Gubanich either was not informed of or misunderstood the consequences of pleading no contest to a violation of Section 4511.1(A)(1)(a). I, therefore, agree that the trial court's judgment must be affirmed.

APPEARANCES:

DAVID C. SHELDON, Attorney at Law, for Appellant.

GREGORY A. HUBER, Attorney at Law, for Appellee.