*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellant,

v

BLAKE ANTHONY-WILLIAM BARTON,

Defendant-Appellee.

UNPUBLISHED
October 11, 2024
3:33 PM

No. 369926
Lenawee Circuit Court
LC No. 23-021272-FH

Before: BOONSTRA, P.J., and JANSEN and N. P. HOOD, JJ.

PER CURIAM.

The prosecution appeals by leave granted[1] the circuit court's order granting the motion to suppress evidence filed by defendant, Blake Anthony-William Barton. The circuit court granted the motion to suppress due to a perceived technical noncompliance with MCL 257.625a(6)(e). In a motion for reconsideration, the prosecution submitted evidence demonstrating that the circuit court's decision relied on a factual error. For that reason, and those stated below, we reverse and remand.

## I. BACKGROUND

This case started with a drunk driving investigation following a car wreck in Britton, Michigan. On September 10, 2022, at approximately 2:00 a.m., Officer David Low, a member of the Raisin Township Police Department, responded to a car accident at the intersection of Sutton Road and Ridge Highway. When he arrived, Officer Low saw that a vehicle "had gone through the field" to land in a wooded area off the roadway, with the car positioned on its left side. The driver and the sole occupant of the vehicle, later identified as Barton, was partially pinned underneath the car. Specifically, he was partially inside the vehicle with his legs pinned under the vehicle.

---

[1] See *People v Barton*, unpublished order of the Court of Appeals, entered May 21, 2024 (Docket No. 369926).

Nonetheless, Officer Low was able to speak with him. Officer Low asked Barton what happened, and Barton said that he planned on attending a rodeo. To Officer Low, this sounded suspicious because it was approximately 2:16 a.m., well after any rodeo would have ended. Barton also admitted that he consumed alcohol earlier in the night. Officer Low remained at the scene of the wreck from the time he arrived until the wrecked automobile was removed approximately two or three hours later.

Barton was removed from the car and transported to ProMedica Toledo Hospital (Toledo Hospital) in Toledo, Ohio for treatment.[2] Relevant to this case, medical staff drew Barton's blood for the purpose of medical treatment. He was not under arrest at the time medical staff drew his blood.

Two days after the wreck, on September 12, 2022, the prosecutor's office sent a letter to Toledo Hospital requesting that it provide Barton's chemical analysis from September 10. The Prosecuting Attorney for Lenawee County signed the letter. Specifically, he requested:

> Please provide to the Raisin Township Police Department the complete chemical analysis of the above-named subject that was performed on or about September 10, 2022.
>
> This request is submitted in accordance with Ohio Revised Code, 2317.02, which is attached for your reference. This is an open and pending investigation. Please mail the records to the Raisin Township Police Department . . . (emphasis omitted).

The letter did not attach a copy of Ohio Rev Code 2317.02 as it stated. Instead, the prosecutor's office provided a Michigan Attorney General opinion detailing the enforceability of MCL 257.625a(6)(e) prior to a person's arrest. In response, Toledo Hospital sent the chemical analysis results to the police department. The chemical analysis disclosed that Barton's blood and urine samples, which indicated a blood alcohol level of 0.23 and the presence of tetrahydrocannabinol (THC).

After Officer Low submitted his police report, which included the chemical analysis results, to the prosecution, the prosecution charged Barton with one count of operating a vehicle while intoxicated (OWI), third offense, MCL 257.625(1); MCL 257.625(9)(c), and one count of operating a motor vehicle with a suspended or revoked license, second offense, MCL 257.904(1); MCL 257.904(3)(b).

The fact of the prosecutor's letter requesting the chemical analysis was undisclosed to the circuit court until late in the case. In fact, during the preliminary examination, Officer Low

---

[2] At first, Barton was transported to ProMedica Charles and Virginia Hickman Hospital (Hickman Hospital) in Adrian, Michigan. We take judicial notice that Hickman Hospital is the closest hospital to the scene of the accident (approximately a 7.3-mile drive). Barton was then transported by air ambulance (or "life flighted") to Toledo Hospital. The record is silent on why he was moved.

testified that he was the party responsible for requesting Barton's medical record from Toledo Hospital. At the preliminary examination, Officer Low testified as follows:

> [*Prosecutor*]: Okay. Did you ever reach out to Toledo Promedica and ask for his medical records?
>
> [*Officer Low*]: I did.
>
> [*Prosecutor*]: And what was the purpose of obtaining those medical records?
>
> [*Officer Low*]: To determine his blood alcohol level.

Following the preliminary examination, the district court bound over the case, and Barton moved to suppress evidence in the circuit court. In his prayer for relief, Barton requested that the court "suppress the results of the search of his blood in this case." In his supporting brief, he argued more generally that Officer Low's acquisition of the hospital's medical records violated both the statute and his constitutional right to be protected against unreasonable searches and seizures.[3] The prosecution responded that it was well established that after a car accident, MCL 257.625a(6)(e) permitted the disclosure of the blood test results of the vehicle's driver, if the blood draw was conducted for medical purposes. The prosecution did not contest or challenge Barton's statement of facts, including the factual assertion (supported by the preliminary examination testimony) that Officer Low, not the prosecuting attorney, requested Barton's chemical analysis results.

The circuit court held a hearing on Barton's motion to suppress evidence. On January 11, 2024, the circuit court entered an order granting Barton's motion. The court provided no reasoning, but characterized the motion as presenting "the issue of suppressing the chemical analysis of [Barton's] blood in the present case."

The prosecution moved for reconsideration. Its primary basis for the motion was palpable error. The prosecution argued that, while the matter was not previously clarified during the lower court proceedings, the prosecution was the party responsible for requesting for Barton's chemical analysis, not Officer Low. As an exhibit to its motion, the prosecution provided a copy of its September 12, 2022 letter to Toledo Hospital. Notably, until the prosecutor provided the September 12, 2022 letter as an exhibit to its motion for reconsideration, there was no evidence that the prosecution had requested the chemical evidence. The prosecution further argued that, under MCL 257.625a(6)(e), the disclosure of a Barton's chemical analysis results was mandatory. According to the prosecution, the hospital properly complied with the prosecution's statutory request when the hospital mailed Barton's medical record to Officer Low. Barton responded in opposition focusing on the purported constitutional violation.

In February 2024, the circuit court entered an order denying the prosecution's motion for reconsideration, maintaining that the prosecution violated MCL 257.625a(6)(e) as "the statute

---

[3] The motion challenged the police seizure of the hospital's medical records, not the hospital's drawing and testing of his blood and urine.

-3-

requires the request to come from the prosecuting attorney, not a member of law enforcement." The court further opined, "MCL 257.625a(6)(e) provides a statutory exception to the Fourth Amendment's warrant requirements in order to protect an individual's right against illegal search and seizure. Violation of that statute is a violation of the Fourth Amendment's privacy protections, and suppression is therefore appropriate." To the extent the prosecution contended it complied with Ohio Rev Code 2317.02, the circuit court observed that Ohio Courts repeatedly held that a warrant was required to acquire medical records under the statute. This appeal followed.

## II. STANDARD OF REVIEW

"We review de novo a [circuit] court's ultimate decision on a motion to suppress on the basis of an alleged constitutional violation." *People v Gingrich*, 307 Mich App 656, 661; 862 NW2d 432 (2014). We also review de novo questions of law, including whether the Fourth Amendment was violated and whether the exclusionary rule applied. *People v Corr*, 287 Mich App 499, 506; 788 NW2d 860 (2010). However, we review for clear error any findings of fact made by the circuit court at a suppression hearing. *People v Williams*, 472 Mich 308, 313; 696 NW2d 636 (2005). "A [circuit] court's factual findings are clearly erroneous if the reviewing court is left with a definite and firm conviction that the [circuit] court made a mistake." *People v Pippen*, 509 Mich 999, 999; 974 NW2d 241 (2022) (quotation marks and citation omitted).

## III. LAW AND ANALYSIS

The prosecution argues that the circuit court erred when it granted Barton's motion to suppress evidence because it improperly concluded that the prosecution failed to comply with the statutory requirements of MCL 257.625a(6)(e) to obtain Barton's chemical analysis results, amounting to a violation of Barton's right to be protected from unreasonable searches and seizures. The prosecution further argues that even if it failed to abide by the requirements of MCL 257.625a(6)(e), or if the statute is deemed unconstitutional, the alleged breach did not warrant the suppression of the contested evidence under the exclusionary rule. We agree.

### A. MCL 257.625a(6)(e)

At issue is MCL 257.625a, sometimes referred to as Michigan's "implied consent statute," and MCL 257.625a(6)(e), the so-called "accident exception." As our Supreme Court explained in *People v Calloway*, 500 Mich 180, 184; 895 NW2d 165 (2017):

> In interpreting statutes, our goal is to give effect to the Legislature's intent, focusing first on the statute's plain language. In doing so, we examine the statute as a whole, reading individual words and phrases in the context of the entire legislative scheme. When a statute's language is unambiguous, the Legislature must have intended the meaning clearly expressed, and the statute must be enforced as written. [(Quotation marks and citations omitted)].

"[I]n determining the Legislature's intent, statutory provisions must be read in the context of the whole statute and harmonized with the statute's other provisions." *Walt Disney Co v Eubanks*, 345 Mich App 213, 223; 4 NW3d 797 (2023) (quotation marks and citation omitted). "It is well established that different provisions of a statute that relate to the same subject matter are *in pari*

*materia* and must be read together as one law." *TCF Natl Bank v Dept of Treasury*, 330 Mich App 596, 609; 950 NW2d 469 (2019) (quotation marks and citation omitted).

Section 625a of the Michigan Vehicle Code, MCL 257.1 *et seq*., provides the following, in pertinent part:

> The following provisions apply with respect to chemical tests and analysis of a person's blood, urine, or breath, other than a preliminary chemical breath analysis:
>
> * * *
>
> (e) If, after an accident, the driver of a vehicle involved in the accident is transported to a medical facility and a sample of the driver's blood is withdrawn at that time for medical treatment, the results of a chemical analysis of that sample are admissible in any civil or criminal proceeding to show the amount of alcohol or presence of a controlled substance or other intoxicating substance in the person's blood at the time alleged, regardless of whether the person had been offered or had refused a chemical test. The medical facility or person performing the chemical analysis shall disclose the results of the analysis to a prosecuting attorney who requests the results for use in a criminal prosecution as provided in this subdivision. A medical facility or person disclosing information in compliance with this subsection is not civilly or criminally liable for making the disclosure. [MCL 257.625a(6)(e).]

In other words, MCL 257.625a(6)(e) permits the admission of chemical analysis from blood samples taken for medical treatment following an accident and requires the medical facility to disclose the information to a prosecuting attorney. See *id*.

Our Legislature enacted MCL 257.625a,[4] to endorse the public policy goals of promoting the safety of the public and intoxicated drivers by (1) facilitating the prosecution of drunk drivers, and (2) ensuring drivers under the influence, if injured, receive immediate medical attention, considering law enforcement will be less inclined to detain the driver for a criminal investigation if the results of subsequent testing were admissible without an arrest. See *People v Keskimaki*, 446 Mich 240, 248; 521 NW2d 241 (1994) (opining, "The legislative purposes underlying the accident exception [are] . . . to promote the safety of both the public and the drunk driver"). See also *People v Perlos*, 436 Mich 305, 328; 462 NW2d 310 (1990) (stating, "We are persuaded that the public interest is furthered by this act because it facilitates the prosecution of drunken drivers and insures that drivers who are injured in automobile accidents will get prompt medical

---

[4] An "implied consent statute," like MCL 257.625a, provides procedures for obtaining blood samples, breath samples, and chemical test results through streamlined procedures short of (or in advance of) obtaining a search warrant. See MCL 257.625a. See also *Manko v Root*, 190 Mich App 702, 703-704; 476 NW2d 776 (1991). Under the statute, a person who operates a motor vehicle is deemed to have given consent to a blood alcohol test, therefore, the issue is not viewed in the search and seizure context, but largely in terms of consent. See *People v Keen*, 396 Mich 573, 579; 242 NW2d 405 (1976).

attention . . ."). The statute does not require a driver to be under arrest at the time his or her blood alcohol levels are tested for the results to be admissible. See MCL 257.625a(6)(e). See also *People v Aldrich*, 246 Mich App 101, 118; 631 NW2d 67 (2001) (stating, "By its plain terms . . . subsection 6(e) concerns tests done on blood drawn not for legal responsibility reasons, but for medical purposes, and is not limited to those under arrest.").

Here, the chemical analysis at issue would appear to fall squarely within the statute, but for the fact that Officer Low testified that he, not the prosecuting attorney, requested the analysis results. The circuit court granted Barton's motion to suppress under the belief that Officer Low testified accurately that he was the person responsible for seeking Barton's chemical analysis results. Although it was the prosecution, not the defense, that elicited this testimony during the suppression hearing, that factual representation is incorrect. In its motion for reconsideration, the prosecution submitted new evidence that the prosecuting attorney was the party responsible for contacting the hospital and requesting Barton's medical record, as required under MCL 257.625a(6)(e). Acknowledging that it is the prosecution's burden to establish the validity of a warrantless search, see *People v Cartwright*, 454 Mich 550, 562; 563 NW2d 208 (1997),[5] Barton's motion to suppress did not center on who, exactly, demanded the test results. Nonetheless, the circuit court was misled on the facts (even if by the prosecution's own error), and it failed to reevaluate its decision to grant Barton's motion to suppress evidence, despite the prosecution later highlighting the factual error. Rather, the court continued to assert that the prosecution violated MCL 257.625a(6)(e) as "the statute requires the request to come from the prosecuting attorney, not a member of law enforcement." But here, the request did come from the prosecuting attorney.

Separate from, but related to, the issue of who makes the request, MCL 257.625a(6)(e) also provides that the medical facility must provide the chemical analysis results to a prosecuting attorney, as opposed to law enforcement, after the prosecuting attorney requests a defendant's results from the medical facility. Here, there is no question that the medical facility (Toledo Hospital) provided the chemical analysis to Officer Low, not the prosecuting attorney. But it did so at the prosecuting attorney's request. In the September 12, 2022 letter, the prosecuting attorney requested that Toledo Hospital send Barton's medical record to the police department responsible for investigating the underlying car accident. From a technical standpoint, that is not what MCL 257.625a(6)(e) provides, but that is not dispositive for three reasons. First, the statute does not expressly prohibit the prosecuting attorney from instructing the medical facility to disclose the results to the prosecuting attorney's agent or designee, whether an investigator or another attorney within the prosecuting attorney's office or another member of the prosecution team, such as the officer responsible for investigating the case. Second, here, the investigating agency prepared the final investigative report, which included Barton's blood alcohol level and positive THC result, and provided to the prosecution, the party responsible for charging Barton based on the results of the chemical analysis. In other words, the results were eventually provided to the prosecuting attorney's office. Third, this hypertechnical reading of MCL 257.625a(6)(e) would put the

---

[5] On appeal, Barton does not appear to challenge the prosecution's use of a motion for reconsideration to submit new evidence that it could have or should have presented during the suppression hearing.

prosecuting attorney in the chain of custody for critical evidence in many drunk driving cases, effectively making the prosecutor a witness.[6] This cannot be what the statute contemplates. The circuit court erred in relying on noncompliance with the statute to deny the motion to reconsider.[7]

## B. EXCLUSIONARY RULE

Even if the prosecuting attorney's request that the medical facility provide the chemical analysis to Officer Low amounted to a technical violation of MCL 257.625a(6)(e), exclusion was not the proper remedy. "The exclusionary rule is a judicially created remedy that originated as a means to protect the Fourth Amendment right of citizens to be free from unreasonable searches and seizures." *People v Hawkins*, 468 Mich 488, 498; 668 NW2d 602 (2003). "[T]he aim of the [exclusionary] rule is one of police deterrence," as opposed to curing the invasion of a person's right to be free from an unconstitutional search or seizure. *Id*. at 499. "Irrespective of the application of the exclusionary rule in the context of a *constitutional* violation, the drastic remedy of exclusion of evidence does not necessarily apply to a *statutory* violation. Whether the exclusionary rule should be applied to evidence seized in violation of a statute is purely a matter of legislative intent." *People v Mazzie*, 326 Mich App 279, 290; 926 NW2d 359 (2018) (quotation marks and citation omitted). "[W]here there is no determination that a statutory violation constitutes an error of constitutional dimensions, application of the exclusionary rule is inappropriate unless the plain language of the statute indicates a legislative intent that the rule be applied." *Id*., quoting *Hawkins*, 468 Mich at 507.

MCL 257.625a(6) does not provide for the exclusion of evidence acquired in a manner that is not strictly in compliance with the statute, particularly for what would be best categorized as a technical violation concerning the party receiving the record. Furthermore, other cases involving a violation of MCL 257.625a(6) suggest that the exclusion of such evidence is improper. See

---

[6] Relatedly, assuming that MCL 257.625a(6)(e) relies on the same definition of "prosecuting attorney" as other provisions, see, e.g., Const 1963, art 7, §4 (providing for the election, in each county, of "a prosecuting attorney"); MCL 49.11 through MCL 49.160 (an act authorizing prosecuting attorneys in certain cases to appoint assistant prosecuting attorneys for their respective counties, and prescribing the powers and duties of such assistants); MCL 49.41 (empowering "[t]he prosecuting attorney of any county" to appoint assistant prosecuting attorneys); MCL 49.31 (providing procedures for authorizing the prosecuting attorney to appoint assistants, clerks, investigators, and stenographers), Barton's suggested hypertechnical reading would also yield an absurd result. Standing alone, the text of MCL 257.625a(6)(e) arguably would require the prosecuting attorney (not an assistant prosecuting attorney or investigator) to individually request and receive the chemical analysis in every case. For small and large prosecutor's offices, this would create a logistical nightmare due to other demands and the press of business for prosecuting attorneys.

[7] To the extent that Barton contests the admissibility of his urinalysis results, MCL 257.625a(6)(e) is inapplicable. See *People v Mayhew*, 236 Mich App 112, 118; 600 NW2d 370 (1999) (stating, "the provisions of subsection 6(e) are not applicable here because that subsection only references blood samples and their chemical analysis, without any mention of urine samples or urinalysis."). The Court in *Mayhew* held, however, that such results are admissible under MCL 257.625a(6)(a).

*People v Anstey*, 476 Mich 436, 449; 719 NW2d 579 (2006) (opining, "The language of MCL 257.625a does not reveal that the Legislature intended to impose the drastic remedy of dismissal or suppression of the evidence when an officer fails to give a defendant a reasonable opportunity for an independent chemical test."). See also *People v Lyon*, 227 Mich App 599, 610-611; 577 NW2d 124 (1998) (providing, "our conclusion that defendant's arrest was not statutorily valid does not inevitably lead to the suppression of evidence gained after his arrest, including the results of his blood alcohol test."). Additionally, the purpose of the exclusionary rule is to deter law enforcement from violations of constitutional and statutory protections, but in the instant matter, there was no officer misconduct present in the acquisition of Barton's chemical analysis results. Rather, Officer Low simply received the results at the direction of the prosecuting attorney. Alternatively, the prosecution could have obtained a search warrant for Barton's medical record and sought admission under MCL 257.625a(6)(a), which expressly permits the results of chemical testing of blood and urine to be introduced into evidence.

## C. CONSTITUTIONALITY OF MCL 257.625A(6)(E)

While the circuit court did not expressly address the matter during the lower court proceedings, Barton primarily challenged the constitutionality of MCL 257.625a(6)(e), arguing that the statute was unconstitutional because it permitted warrantless searches and seizures that would generally be barred under the Fourth Amendment. Binding precedent from our Supreme Court says otherwise. See *Perlos*, 436 Mich at 328-331. In *Perlos*, our Supreme Court determined that, while a defendant may have a subjective expectation that his or her results would remain confidential, "Any expectation of privacy defendants may have had in the test results was unjustified, given societal concerns with regard to drunken driving, the Legislature's implied amendment of the physician-patient privilege, and the resulting minimal intrusion on defendants." *Perlos*, 436 Mich at 330. The *Perlos* Court advanced, "defendants do not have a protected Fourth Amendment interest in blood alcohol test results under the circumstances presented by these cases[,]" which featured medical personnel ordering a chemical analysis, on their own initiative, for drivers who were transported to a hospital after a car accident. *Id*. at 320, 330.

The circumstances contemplated in *Perlos* are present here. As with the cases in *Perlos*, (1) there was a motor vehicle accident, (2) the driver, Barton, was transported to a hospital for treatment, (3) medical staff sought testing for treatment purposes, and (4) the prosecution requested the chemical analysis results under MCL 257.625a(6)(e). See *id.* at 309-311. Ultimately, the *Perlos* decision binds this Court, and even if this Court believes that subsequent judicial decisions warrant reexamining *Perlos*, the outcome remains the same as *Perlos* has not been expressly overruled by our Supreme Court or superseded by subsequent legislation or constitutional amendments. See *Assoc Builders & Contractors v Lansing*, 499 Mich 177, 192-193; 880 NW2d 765 (2016) (stating, "[I]t is the Supreme Court's obligation to overrule or modify case law if it becomes obsolete, and until this Court takes such action, the Court of Appeals and all lower courts are bound by that authority.") (Quotation marks and citation omitted).

Another issue during the lower court proceedings was the relevance of the Ohio Court of Appeals' decision in *State v Eads*, 2020-Ohio-2805, ¶ 37; 154 NE3d 538 (Ohio App, 2020), as the prosecution cited Ohio Rev Code 2317.02 in its record request to the hospital. Even if *Perlos* did not control the outcome in this case, *Eads* has limited application here. In *Eads*, the Ohio Court of Appeals determined that the officer's warrantless acquisition of the defendant's medical records,

under Ohio Rev Code 2317.02, violated the defendant's Fourth Amendment rights, because the defendant maintained a reasonable expectation of privacy in the hospital records containing his chemical analysis results. *Id*. However, *Eads* did not constitute a facial challenge to Ohio's implied-consent statute; it was an as-applied challenge to Ohio Rev Code 2317.02. See *id.* The *Eads* court clarified that there were conflicting decisions issued by different districts of that court regarding whether a warrant was required to obtain test results from a medical provider. *Id*. at ¶ 23. The *Eads* decision further explained, "under the facts of *this* case, we conclude that [the defendant] had a reasonable expectation of privacy in the hospital records containing the alcohol[] and drug-test results." *Id*. at ¶ 37 (emphasis added). Moreover, the *Eads* Court stated, "suppression of the evidence obtained as a result of the statutorily-based records request would have no appreciable effect in deterring a violation of the Fourth Amendment[,]" and the contested chemical analysis results were ultimately admissible. *Id*. at ¶¶ 42-43. Subsequent decisions have limited *Eads* on a similar basis. See *State v Gubanich*, 2022-Ohio-2815, ¶ 19; 194 NE3d 850 (Ohio App, 2022) (providing because *Eads* was an as-applied challenge, the defendant failed to demonstrate that the statute was facially unconstitutional, and the exclusionary rule was inapplicable because the officer relied in good faith on the statute). Regardless, this Court remains bound by the decision of our Supreme Court in *Perlos*, which provides a warrant was not required to obtain Barton's test results. The circuit court was similarly bound. The circuit court therefore erred when it granted Barton's motion to suppress and denied the prosecution's motion to reconsider.

## IV. CONCLUSION

For the reasons stated, we reverse and remand to the circuit court for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Mark T. Boonstra
/s/ Kathleen Jansen
/s/Noah P. Hood