[Cite as *Cleveland v. Khamies*, 2023-Ohio-812.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| CITY OF CLEVELAND, | : | |
| Plaintiff-Appellee, | : | |
| | | No. 111661 |
| v. | : | |
| YAHYA KHAMIES, | : | |
| Defendant-Appellant. | : | |

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** March 16, 2023

Criminal Appeal from the Cleveland Municipal Court
Case No. 2021-TRC-014118

*Appearances:*

Mark Griffin, Cleveland Director of Law, Aqueelah A. Jordan, Cleveland Chief Prosecuting Attorney, and Retanio AJ Rucker, Assistant Prosecuting Attorney, *for appellee.*

John H. Lawson, *for appellant.*

ANITA LASTER MAYS, A.J.:

{¶ 1} In a complaint filed on June 24, 2021, plaintiff-appellee city of Cleveland ("City") charged defendant-appellant Yahya Khamies ("Khamies") with operating a vehicle under the influence ("OVI") under Cleveland Codified

Ordinances ("C.C.O.") 431.01(a)(1)(A), and failure to control ("FTC") under C.C.O. 431.34(a). Khamies has filed a delayed appeal of his convictions. We affirm the trial court's judgment.

## I.   Background and Facts

{¶ 2}   On June 19, 2021, at 11:42 p.m., Khamies was cited by the Cleveland Police Department ("CPD") for violating the cited code sections. The citation indicates a prior OVI in 2014 and indicates an accident occurred. The bench trial was held on March 30, 2022. Khamies was represented by counsel and furnished with an Arabic interpreter.

{¶ 3}   CPD officer Black ("Officer Black") testified that she responded to the accident scene. The accident occurred in the city of Cleveland on West 117th Street in front of the Rally's restaurant. The street is located on the Cleveland-Lakewood city border and Lakewood officers were at the scene. Officer Black observed a heavily damaged Kia with deployed airbags at the scene but did not see the other vehicle. Lakewood officers advised that the drivers had been transported to Lakewood Hospital.

{¶ 4}   At the hospital, Officer Black met briefly with Daria Calloway ("Calloway"), the Kia owner, whom the officer observed had arm injuries and chest pains. Officer Black next met with Khamies who stated he was driving the other vehicle, a silver Town and Country van. Khamies stated he had been drinking alcohol.

{¶ 5} Officer Black observed that "[Khamies's] eyes were "really red and then he was very talkative. But I really didn't — I (inaudible) to me. And he had slurred speech, very slurred speech, and then he kept asking (inaudible). I think he did not understand."[1] (Tr. 31.) A nurse set up a telephonic device that allowed a live translator to read the Ohio Bureau of Motor Vehicle 2255 administrative license suspension form ("ALS form") to Khamies in Arabic. The record contains an ALS form purportedly signed by Khamies.

{¶ 6} The City asked Officer Black whether, based on her training, experience, and observations, the officer believed Khamies was under the influence of alcohol or drugs that made him too impaired to drive. Officer Black's initial response regarding her opinion on whether Khamies was too impaired to drive was "inaudible." (Tr. 35.) During redirect, Officer Black explained that the observed indications of intoxication included "slurred speech, bloody eyes, sometimes (inaudible) very talkative." (Tr. 43.) Also, "[h]e wasn't tuned — tuned in. He was talkative. He was, um, upset that I was there to try to get — to try to help see what was going on. I wasn't able to reiterate anything because he kept cutting me off." (Tr. 47.)

{¶ 7} Officer Black also added that upon arrival, she introduced herself to Khamies, advised him that the conversation was being recorded, and asked what

---

[1] Testimony began on page 22 of the transcript and the case concluded at page 83. From pages 22 to 83, there are over 100 indications that a portion of the testimony or inquiry was "inaudible." However, it also appears from the record that counsel and the witnesses may have been wearing masks.

was going on. The interpreter was provided at Khamies's request. Khamies was also upset with the interpreter and kept cutting the interpreter off. Officer Black did not recall whether she repeated the discussion that she initially had with Khamies after the translator became involved.

{¶ 8} Calloway, the driver of the Kia, testified that she was heading southbound in the two-way center turning lane on West 117th Street waiting to turn left into Rally's when she saw a silver minivan heading directly toward her in the turning lane. Calloway turned left to avoid a head-on collision and Khamies's van hit the Kia on the right rear passenger side. The airbags deployed on impact. When Calloway awakened after the incident and unbuckled her seatbelt, her car was in the flower pit area of the Rally's parking lot by the sidewalk. EMS arrived and Calloway agreed to go to the hospital. Calloway experienced pain in her back, left arm, and left leg and the Kia was totaled. Calloway recalled speaking with Officer Black at the hospital and telling the officer that Khamies was drunk.

{¶ 9} There were no other witnesses. Khamies moved for judgment of acquittal under Crim.R. 29. The trial court asked the City whether there was any additional evidence of intoxication.

City: Outside of the medical records?

Court: You just gave me some medical records. What — what about them? I mean, you want me to go through all the medical records and make my own determination? Is that what you're asking the court to do?

(Tr. 64-65.) The City referenced an alcohol test conducted at the hospital to which the court responded, "Well I didn't hear anything about an alcohol test being taken at the hospital. There's nothing in evidence about that." (Tr. 65.) A sidebar ensued.

{¶ 10} After the trial court walked the City through the medical records admissions procedure, the City directed the trial court's attention to the relevant pages in the record that it had extracted and marked as exhibits. The City identified the ethanol urine results as .319, the clinical impressions, diagnostic toxicology testing, and the record of the date, time, and reason for seeing the patient in Exhibits A through D, respectively. The exhibits were admitted over defense counsel's continuing objection. Khamies was convicted and advised the trial court at the sentencing that he does not use drugs or alcohol.

{¶ 11} Khamies was fined and sentenced to a minimum mandatory term of ten days to be followed by wearing a SCRAM device for 60 days, placed on three years of active probation, received a five-year license suspension, and was ordered to have restorative plates and an interlock device.

## II. Assignments of Error

{¶ 12} Khamies poses two assignments of error:

I. Appellant's constitutional right to effective assistance of counsel was violated when counsel failed to challenge admissibility of the urine-alcohol test results.

II. The trial transcript of March 30, 2022, is 83 pages long and has 121 "inaudibles" so that a decision on the merits cannot be rendered.

## III. Discussion

### A. Ineffective Assistance

{¶ 13} Khamies was convicted of C.C.O. 433.01(a)(1)(A) OVI and C.C.O. 431.34(a) FTC. C.C.O. 433.01 "Driving or Physical Control While Under the Influence of Alcohol or Drugs; Tests; Presumptions; Penalties" provides in pertinent part:

(a) Driving under the influence.

(1) No person shall operate any vehicle, streetcar, or trackless trolley within this City, if, at the time of the operation, any of the following apply:

A. The person is under the influence of alcohol, a drug of abuse, or a combination of them.

{¶ 14} C.C.O. 431.34 "Failure to Control; Weaving; Full Time and Attention" provides:

(a) No person shall operate a motor vehicle or motorcycle upon any street or highway without exercising reasonable and ordinary control over such vehicle.

{¶ 15} Khamies argues that counsel was ineffective for failing to attempt to have the warrantless acquisition of Khamies's medical records suppressed to address whether Khamies had an expectation of privacy. We disagree.

{¶ 16} "A claim of ineffective assistance of counsel is judged using the standard announced in *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)." *State v. Sims*, 8th Dist. Cuyahoga No. 109335, 2021-Ohio-4009, ¶ 21, citing *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989). "'Counsel's performance will not be deemed ineffective unless and until counsel's

performance is proved to have fallen below an objective standard of reasonable representation and, in addition, prejudice arises from counsel's performance.'" *Id.*, quoting *Bradley*, at paragraph two of the syllabus.

{¶ 17} Failure to file a motion to suppress does not constitute per se ineffective assistance of counsel. *State v. Madrigal*, 87 Ohio St.3d 378, 389, 721 N.E.2d 52 (2000), citing *Kimmelman v. Morrison*, 477 U.S. 365, 106 S.Ct. 2574, 91 L.Ed.2d 305 (1986). The failure to file a motion to suppress constitutes ineffective assistance of counsel only when the record demonstrates a reasonable probability that the motion would have been successful if made and affected the outcome of the case. *State v. Sanchez*, 8th Dist. Cuyahoga No. 103078, 2016-Ohio-3167, ¶ 22, citing *State v. Moon*, 8th Dist. Cuyahoga No. 101972, 2015-Ohio-1550, ¶ 28. "'Even if some evidence in the record supports a motion to suppress, counsel is still considered effective if counsel could reasonably have decided that filing a motion to suppress would have been a futile act.'" *Id.*, quoting *id.*

{¶ 18} Also, under Ohio law, in a bench trial, "the trial court is entitled to the presumption of regularity, that is, the trial court is presumed to know and follow the law in arriving at its judgment unless it affirmatively appears to the contrary." *State v. Shropshire*, 8th Dist. Cuyahoga No. 103808, 2016-Ohio-7224, ¶ 37, citing *State v. Eley*, 77 Ohio St.3d 174, 180, 672 N.E.2d 640 (1996), citing *State v. Post*, 32 Ohio St.3d 380, 513 N.E.2d 754 (1987). "In other words, in an appeal from a bench trial, we presume that a trial court relies only on relevant, material, and competent evidence in arriving at its judgment." *Id.*, citing *id.* at 180.

{¶ 19} Prior to trial, the trial court asked the City whether it had acquired the medical records, "[b]ecause there was some problem getting those?" The City responded affirmatively. The City reminded the court that the trial was continued previously "at the court's request because [the defense] requested for us to provide them with medical records." (Tr. 7.)

City: I provided the medical records. [Defense counsel] has them and — * * *

Court: [T]hen the Court continued [the trial previously] because apparently defendant wanted medical records.

City: And [the defense] has been provided proof of medical records, your Honor.

Court: But those were the defendant's medical records. Could not the defendant have subpoenaed these himself?

City: That is correct.

Court: It seems to the court that could have happened. Anyway, the City complied with that request.

(Tr. 7-8.)[2]

{¶ 20} After the conclusion of testimony by the City's two witnesses, the trial court asked whether there was additional evidence of intoxication that elicited the City's reference to the medical evidence. After a sidebar, the trial court took judicial notice that the records were certified records from the hospital kept in the ordinary

---

[2] A February 28, 2022 journal entry documenting the grant of a continuance notes that the City had made multiple attempts to get the medical records before they were secured.

course of business.  However, the trial court explained that it "did not, however, take judicial notice of any substance contained in those records." (Tr. 66.)

{¶ 21} The City advised that it marked excerpts from the record as exhibits and the trial court stated it would "be happy to take whatever exhibits you've marked." (Tr. 67.)  The City then proffered the four marked exhibits.

{¶ 22} After presentation of the exhibits, the following discussion occurred:

Court:  Did you want to make any, uh, any further record relative to the admissibility of these records?  I'll just do it for you.

Revised Code 2317.422 sets forth the procedure for the admission of hospital records into evidence.  Copies of them may be admitted if certified as prepared in the usual course of business, uh, and as long as they are served on, uh, adverse parties.  And that has been done.  I believe we discussed that at the beginning of trial.

And the ability to do this relieves the proponent of the evidence not to have to subpoena the, uh, records retention clerk or anyone involved in administration of these tests.  Uh, did you wish to add anything to that, counsel?

City:  Yes, your Honor.  I'm sorry.  [The bailiff] was just giving me my copies.

Court:  Oh.

City:  (Inaudible) what you said just now which is in regards to the documents, the exhibits.

Court:  In addition, uh, there is a physician/patient privilege.  Uh, I haven't looked through these records yet, but I'm assuming there may be some reference to, uh, some alcohol — drug and alcohol testing which would be, uh, excluded from privilege pursuant to law.

(Tr. 68-70.)[3]

{¶ 23} The City then specified on a per exhibit basis what information in the exhibit was being submitted for trial court consideration. Defense counsel stated, "Your Honor, we would respectfully object for the record. Thank you." (Tr. 70.) There was no discussion regarding the grounds for the objection. The trial court noted the objection, admitted the records, and denied the defense motion for judgment of acquittal.[4]

{¶ 24} The City argues that it submitted a written request for the medical information to Lakewood Hospital on or about January 27, 2022, pursuant to R.C. 2317.02(B)(2). No testimony, details, or copies of the submission are in the record. What is in the record is the City's statement that the defense asked the City for the medical records, the City secured and provided the defense with a copy of the records, and the trial court's comment that the defense could have subpoenaed the records itself. The defense did not deny the truth of the assertions.

---

[3] We note that the trial court erroneously cited R.C. 2317.422 that governs the evidentiary "qualification of medical records evidence by a nursing, rest home and adult care facilities records." However, R.C. 2317.422(B) specifies that the protocol in R.C. 2317.422(A) does not apply to certified copies of test results for alcohol or other substances related to a criminal action or proceeding under R.C. 2317.02(B)(2)(b) or (B)(3)(b). Thus the trial court's substance and application is correct and the misstatement was harmless. *See also* R.C. 2317.02(B)(2)(b) and (B)(3)(b).

[4] Khamies asserts as error here only that counsel should have filed a motion to suppress the warrantless acquisition of the records.

**{¶ 25}** R.C. 2317.02(B)(2) relates to privileged communications and provides the following regarding health care records secured for an official criminal investigation:

> The following persons shall not testify in certain respects:
>
> (B) (2) (a) If any law enforcement officer submits a written statement to a health care provider that states that an official criminal investigation has begun regarding a specified person or that a criminal action or proceeding has been commenced against a specified person, that requests the provider to supply to the officer copies of any records the provider possesses that pertain to any test or the results of any test administered to the specified person to determine the presence or concentration of alcohol, a drug of abuse, a combination of them, a controlled substance, or a metabolite of a controlled substance in the person's whole blood, blood serum or plasma, breath, or urine at any time relevant to the criminal offense in question, and that conforms to section 2317.022 of the Revised Code, the provider, except to the extent specifically prohibited by any law of this state or of the United States, shall supply to the officer a copy of any of the requested records the provider possesses. If the health care provider does not possess any of the requested records, the provider shall give the officer a written statement that indicates that the provider does not possess any of the requested records.
>
> (b) If a health care provider possesses any records of the type described in division (B)(2)(a) of this section regarding the person in question at any time relevant to the criminal offense in question, in lieu of personally testifying as to the results of the test in question, the custodian of the records may submit a certified copy of the records, and, upon its submission, the certified copy is qualified as authentic evidence and may be admitted as evidence in accordance with the Rules of Evidence. Division (A) of section 2317.422 of the Revised Code does not apply to any certified copy of records submitted in accordance with this division. Nothing in this division shall be construed to limit the right of any party to call as a witness the person who administered the test to which the records pertain, the person under whose supervision the test was administered, the custodian of the records, the person who made the records, or the person under whose supervision the records were made.

{¶ 26} As to Khamies's privacy rights and the physician-patient privilege under R.C. 2317.02, this court has held:

> R.C. 2317.02 deems the physician-patient privilege is waived in certain specified circumstances. *Cleveland v. Rollins*, 8th Dist. Cuyahoga No. 79614, 2002-Ohio-1087. In thus limiting the waiver, the statute complies with constitutional privacy interests. *Whalen v. Roe*, 429 U.S. 589, 51 L.Ed.2d 64, 97 S.Ct. 869 (1977).

> Pursuant to the terms of R.C. 2317.02, a defendant in a DUI case effectively has consented to a waiver of his right of privacy to the results of diagnostic tests that were given at a time relevant to that criminal offense. *Cleveland v. Rollins*, supra; *State v. Grohowski*, 6th Dist. Lucas No. L-95-292, 1996 Ohio App. LEXIS 4220 (Sept. 30, 1996). This presumption, viz., that a patient who has committed a criminal offense has consented to waive the privilege, distinguishes the statute from the unconstitutional program reviewed in *Ferguson v. Charleston*, 532 U.S. 67, 121 S. Ct. 1281, 149 L.Ed.2d 205, (2001), *Middletown v. Newton*, 125 Ohio App.3d 540, 708 N.E.2d 1086 (12th Dist.1998).

*Cleveland v. Dames*, 8th Dist. Cuyahoga No. 82980, 2003-Ohio-6054, ¶ 5-6; *State v. Eads*, 2020-Ohio-2805, 154 N.E.3d 538, ¶ 23 (1st Dist.).

{¶ 27} Khamies relies on the First District's decision in *Eads* to support the argument that counsel should have moved to suppress the evidence. Appellant Eads was injured in a motorcycle accident, and the responding officer smelled alcohol. Eads was transported to the hospital. The officer obtained the toxicology results from the hospital using a records request form under R.C. 2317.02(B)(2)(a).

{¶ 28} Eads was charged with OVI and failure to control and moved to suppress the evidence stating the statute is unconstitutional and violated his Fourth Amendment rights. The trial court ruled in favor of the state based on the officer's good-faith reliance on the statute. The *Eads* Court considered the Fourth

Amendment implications of the statute as applied to find that a reasonable expectation of privacy exists. *Eads* at ¶ 37.

{¶ 29} Eads also addressed the divergent status of Ohio appellate law on the issue:

> Ohio appellate courts are in conflict as to whether the Fourth Amendment is violated by a law enforcement officer's use of R.C. 2317.02 and 2317.022 to obtain, without a warrant or patient consent, medical records containing toxicology test results from a hospital that performed the tests for the purpose of medical treatment after a suspicious accident. *State v. Smith*, 2d Dist. Greene No. 2019-CA-16, 2019-Ohio-4706, 149 N.E.3d 184, ¶ 9, fn. 3. The Third and Fifth Appellate Districts have held that without a warrant or an exception, the defendant's Fourth Amendment rights are violated. *See State v. Clark*, 2014-Ohio-4873, 23 N.E.3d 218, ¶ 42 (3d Dist.*); State v. Little*, 2014-Ohio-4871, 23 N.E.3d 237, ¶ 40 (3d Dist.); *State v. Saunders*, 5th Dist. Morrow No. 17CA0001, 2017-Ohio-7348, ¶ 32. The Eighth District has held that law enforcement may obtain intoxicant testing results from a treating hospital without a warrant by following the procedures in R.C. 2317.02(B)(2)(a) and 2317.022. *See Cleveland v. Dames*, 8th Dist. Cuyahoga No. 82980, 2003-Ohio-6054, ¶ 6.

*Eads*, 2020-Ohio-2805, 154 N.E.3d 538, at ¶ 23 (1st Dist.).

{¶ 30} The court noted that the request broadly sought records about Eads's use of alcohol, drugs of abuse as defined under Ohio law, some of which are now legal to consume in Ohio, and controlled substances. "This information exposed too much about Eads's private life, even though it could also provide evidence of a crime." *Id.* at ¶ 32.

{¶ 31} The court specified that "under the facts of this case" "Eads had a reasonable expectation of privacy in the hospital records containing the alcohol-and drug-test results." *Id* at ¶ 37.

> Ultimately, the investigating officer was able to see too far into Eads's private life without the protections provided by a warrant, a right guaranteed by the Fourth Amendment. Consequently, we conclude that the evidence the officer obtained from Eads's treating hospital was the product of a search and that the officer was required to obtain a warrant, issued from a neutral and detached magistrate upon a showing of probable cause.

*Id.*

{¶ 32} Notwithstanding the court's conclusion, the court rejected Eads's argument that the trial court should have applied the exclusionary rule, the purpose of which is to deter future unlawful police conduct. *Eads* at ¶ 38. "Courts have held that suppression is not an available remedy when a law enforcement officer conducted a search in good-faith reliance on some higher authority." *Id.* at ¶ 39. "This includes a statute or binding precedent, even if * * * later held unconstitutional." (Citations omitted.) *Id.*

{¶ 33} In *Eads,* the court rejected Eads's argument based on the conflict in Ohio appellate courts and the fact that "suppression of the evidence obtained as a result of the statutorily based records request would have no appreciable effect in deterring a violation of the Fourth Amendment." *Id.* at ¶ 42. "For these reasons, we hold that the good-faith exception to the exclusionary rule applies." *Id. See also State v. Gubanich,* 2022-Ohio-2815, 194 N.E.3d 850, ¶ 19 (9th Dist.) (finding that defendant's Fourth Amendment challenge did not establish that R.C. 2317.02(B)(2) was unconstitutional on its face; in addition, the officer acted in good faith based on the law, and the trial court properly denied the motion to suppress).

{¶ 34} In the instant case, the scope of the admitted records has not been placed in issue. The trial court specified that it did not look through the records and ensured that the City narrowly proffered for consideration only the information relevant to the case. Also, as *Eads* acknowledged, this court "has held that law enforcement may obtain intoxicant testing results from a treating hospital without a warrant by following the procedures in R.C. 2317.02(B)(2)(a) and 2317.022." *Eads* at ¶ 23, citing *Cleveland v. Dames*, 8th Dist. Cuyahoga No. 82980, 2003-Ohio-6054, ¶ 6.

{¶ 35} Thus, as this court stated in *Dames*, "R.C. 2317.02 deems the physician-patient privilege is waived in certain specified circumstances." *Id.* at ¶ 5, citing *Cleveland v. Rollins*, 8th Dist. Cuyahoga No. 79614, 2002-Ohio-1087. "In thus limiting the waiver, the statute complies with constitutional privacy interests." *Id.*, citing *Whalen v. Roe*, 429 U.S. 589, 97 S. Ct. 869, 51 L.Ed.2d 64 (1977)."

{¶ 36} Consequently, it is entirely plausible that, as the record reflects, defense counsel was aware of the law of this court and that the medical records were secured pursuant to statute. The medical records were also: (1) certified, (2) obtained at the request of the defense, and (3) shared with the defense prior to trial.

{¶ 37} "[D]efense counsel's tactical decisions and trial strategies, even 'debatable' ones, do not constitute ineffective assistance of counsel." *State v. Scarton*, 8th Dist. Cuyahoga No. 108474, 2020-Ohio-2952, ¶ 90, citing *State v. Black*, 2019-Ohio-4977, 149 N.E.3d 1132, ¶ 35 (8th Dist.); *State v. Foster*, 8th Dist.

Cuyahoga No. 93391, 2010-Ohio-3186, ¶ 23. Counsel also left the door open for a possible appellate argument by posing a continuing objection for the record.

{¶ 38} Officer Black testified that Khamies showed signs of intoxication, Khamies admitted that he had been drinking, and victim Calloway testified that Khamies was drunk. Under these circumstances, coupled with the law of R.C. 2317.02(B)(2), this court is not satisfied that Khamies has shown that a motion to suppress would have had a "reasonable probability of success and affected the outcome of the case." *Sanchez*, 8th Dist. Cuyahoga No. 103078, 2016-Ohio-3167, ¶ 22; *Moon*, 8th Dist. Cuyahoga No. 101972, 2015-Ohio-1550, at ¶ 28.

{¶ 39} The first assignment of error is overruled.

**B.    Inaudible Transcript References**

{¶ 40} Khamies correctly states that there are over 100 indications of "inaudible" in the 83-page transcript. As a result, Khamies argues that appellate counsel is unable to assess the merit of any assignment of error due to the state of the transcript. Also, since appellate counsel did not represent Khamies at trial, it is argued that counsel is unable to assist with replicating the record under App.R. 9.

{¶ 41} Generally, it is the duty of the appellant to provide a complete transcript on appeal because it is the appellant's burden to show error by reference to the record. *Knapp v. Edwards Laboratories*, 61 Ohio St.2d 197, 199, 400 N.E.2d 384 (1980), citing *State v. Skaggs*, 53 Ohio St.2d 162, 372 N.E.2d 1355 (1978).

{¶ 42} Where an appellant is not the cause of the failure to produce a complete appellate record, "[the] absence of the record may require reversal of the

underlying conviction and the grant of a new trial." *State v. Tiedjen*, 8th Dist. Cuyahoga No. 106794, 2019-Ohio-2430, ¶ 21, citing *State v. Jones*, 71 Ohio St.3d 293, 297, 1994-Ohio-162, 643 N.E.2d 547 (1994), *State v. Polk*, 8th Dist. Cuyahoga No. 57511, 1991 Ohio App. LEXIS 900 (Mar. 7, 1991) (granting a new trial when the transcript was unavailable through no fault of the parties).

{¶ 43} While it is true that appellate counsel did not represent Khamies at trial, there is no evidence that appellant attempted to resolve the transcript issues pursuant to App.R. 9. A "[d]efendant must demonstrate that effective review will be precluded, and that prejudice will result from the incompleteness of the record." *State v. Walton*, 2d Dist. Montgomery No. 20615, 2006-Ohio-1974, ¶ 13, citing *State v. Williams*, 73 Ohio St.3d 153, 652 N.E.2d 721 (1995). We do not find that to be the case. The inaudible indications did not render the record insufficient to support the convictions in this case or impede the ability to discern potential errors. The elements of the offenses were established, and material inaudible testimony was addressed during cross-examination and/or redirect examination.

{¶ 44} The transcript was sufficient for this court to conduct an effective review. Khamies has failed to demonstrate prejudice. It appears from the record that the trial participants wore protective masks that may have contributed to transcription difficulties. We also reiterate that the trier of fact in a bench trial is presumed to have "'considered only the relevant, material, and competent evidence in arriving at its judgment unless it affirmatively appears to the contrary.'" *State v.*

*Post*, 32 Ohio St.3d 380, 384, 513 N.E.2d 754 (1987), quoting *State v. White*, 15 Ohio St.2d 146, 239 N.E.2d 65 (1968), paragraph two of the syllabus.

{¶ 45} The second assigned error also lacks merit.

## IV. Conclusion

{¶ 46} The trial court's judgment is affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the Cleveland Municipal Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
ANITA LASTER MAYS, ADMINISTRATIVE JUDGE

EILEEN A. GALLAGHER, J., and
MARY J. BOYLE, J., CONCUR